# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

| | |
|---|---|
| ALEXANDER RICE, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | **Consol. Case No. 3:17-cv-00059-REP** |
| v. | |
| GENWORTH FINANCIAL INCORPORATED, THOMAS J. MCINERNEY, JAMES S. RIEPE, WILLIAM H. BOLINDER, G. KENT CONRAD, MELINA E. HIGGINS, DAVID M. MOFFETT, THOMAS E. MOLONEY, JAMES A. PARKE, DEBRA J. PERRY, and ROBERT P. RESTREPO JR., | |
| Defendants. | |

## STIPULATION OF CLASS ACTION SETTLEMENT

This Stipulation of Settlement dated as of April 4, 2018 (the "Stipulation") is made and entered into the above-captioned action by and among: (i) Lead Plaintiffs Alexander Rice and Brian James (on behalf of themselves and each of the Settlement Class Members (as defined in paragraph 30(r) below)), by and through their counsel of record; and (ii) Defendants (as defined in paragraph 30(c) below) by and through their counsel of record (collectively, the "Parties"). The Stipulation is intended by the Parties to fully, finally, and forever resolve, discharge, settle and dismiss with prejudice the Released Claims (as defined in paragraph 30(n) below), upon and subject to the terms and conditions hereof.

## I.    RECITALS

WHEREAS:

1.    On October 23, 2016, Genworth Financial, Inc. ("Genworth" or the "Company")

and China Oceanwide Holdings Group Co., Ltd. ("China Oceanwide") jointly announced that they had entered into a definitive Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Asia Pacific Global Capital Company, Ltd. ("Parent"), a limited liability company incorporated in the People's Republic of China and affiliate of China Oceanwide, will acquire all of the issued and outstanding shares of Genworth common stock (the "Merger") for $5.43 per share in cash (the "Merger Consideration").

2.      In connection with the Merger Agreement, on December 21, 2016, Genworth filed a Schedule 14A Preliminary Proxy Statement (the "Preliminary Proxy Statement") with the U.S. Securities and Exchange Commission ("SEC"), and on January 25, 2017, Genworth filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  In the Proxy Statement, Genworth's board of directors (the "Board") recommended that Genworth shareholders vote in favor of the Merger at a special shareholder meeting scheduled for March 7, 2017.

3.      Following the announcement of the Merger and filing of the Preliminary Proxy Statement, Plaintiff Rice in the above-captioned action as well as plaintiffs in other actions (together, the "Actions" as defined in paragraph 30(a) below)) filed suit naming as defendants Genworth and the individual members of the Board (collectively, "Defendants" as defined in paragraph 30(c) below), and alleging that the Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and the SEC's rules and regulations promulgated under Section 14(a).  The complaints allege that Defendants violated Section 14(a) by recommending the Merger with the Proxy Statement containing false and/or misleading information.  The Actions were each commenced as putative class actions on behalf of a class of all of Genworth's common shareholders other than Defendants and their affiliates.

2

4.      On February 2, 2017, Plaintiff Rice (joined by Plaintiff James) filed a Motion for Preliminary Injunction (the "Rice PI Motion") in which Plaintiff Rice sought to enjoin the shareholder vote on the Merger unless and until certain supplemental disclosures were made to Genworth's shareholders that corrected the alleged deficiencies identified in the Proxy Statement. On the same date, the Court held a conference call with Defendants' counsel and counsel for Plaintiff Rice regarding the Rice PI Motion, and, on February 6, 2017, the Court scheduled a hearing on the Rice PI Motion for February 22, 2017.

5.      On February 6, 2017, counsel for Plaintiffs Rice and James sent a demand letter to Defendants identifying certain misleading disclosures in the Proxy Statement that they sought to have Defendants correct.

6.      On February 10, 2017, Defendants filed their opposition to the Rice Pl Motion. On the same date, Plaintiff Rosenfeld Family Trust filed a motion for expedited proceedings and a preliminary injunction seeking to enjoin the March 7, 2017 Genworth stockholder vote in an action then pending in the United States District Court for the District of Delaware (and later transferred to this Court), *Rosenfeld Family Trust v. Genworth Financial, Inc.*, No. 3:17-cv-00156-REP (the "Rosenfeld Trust PI Motion").  On February 13, 2017, the United States District Court for the District of Delaware scheduled an expedited hearing for the Rosenfeld Trust PI Motion for February 24, 2017, which the District Court vacated on February 14, 2017. Defendants moved to transfer the Rosenfeld Family Trust action to this Court, which motion was granted on February 22, 2017.  After transfer, the Court scheduled an expedited hearing for the Rosenfeld Trust PI Motion for March 1, 2017.

7.      On February 14, 2017, the Court held a conference call with counsel for Defendants and counsel for Plaintiffs Rice, James, and Ratliff to discuss the Rice PI Motion,

3

after which the Court referred the matter to Magistrate Judge David J. Novak for settlement discussions. Thereafter counsel contacted Magistrate Judge Novak and agreed to a schedule for settlement negotiations prior to the March 7, 2017 shareholder vote.

8.      On February 15, 2017, Plaintiff Rice published notice of the Lead Plaintiff deadline pursuant to the Private Securities Litigation Reform Act ("PSLRA") via PR Newswire, which set a deadline for Genworth shareholders to move to be appointed lead plaintiff of the Actions (as defined in paragraph 30(a) below).

9.      On February 16, 2017, Plaintiff Ratliff sent a demand letter to counsel for Defendants outlining supplemental disclosure that he contended was necessary to prevent the Proxy Statement from being materially misleading.

10.      On February 16, 2017, counsel for Defendants sent a letter to counsel for Rice, James, and Ratliff outlining what supplemental disclosure Genworth was prepared to make in order to resolve the Rice PI Motion.

11.      On February 17, 2017, Plaintiffs Rice and James filed an emergency motion to consolidate the Virginia Actions and to appoint Faruqi & Faruqi, LLP as interim class counsel, which motion, after briefing, was granted for purposes of arguing the Rice PI Motion.

12.      On February 21, 2017, following discussions and negotiations, the parties to the Virginia Actions (as defined in paragraph 30(t) below) reached an agreement in principle for Genworth to issue certain additional disclosures prior to the March 7, 2017 shareholder vote, which disclosures would moot the grounds for the Rice PI Motion.

13.      At the February 22, 2017 hearing, the parties informed the Court of the agreement in principle, Plaintiffs Rice and James withdrew the Rice PI Motion, and the Court entered an order consolidating the Virginia Actions (as defined in paragraph 30(t) below) under No. 3:17-

cv-00059-REP, denying the Rice PI Motion as moot, and directing the parties to submit a schedule for the appointment of lead plaintiff and lead counsel in accordance with the PSLRA (which schedule was filed with the Court on March 6, 2017).

14.    On February 24, 2017, Genworth filed the supplemental disclosures negotiated with Plaintiffs James, Rice, and Ratliff with the SEC on Form 8-K and disseminated them to Genworth shareholders.

15.    On February 27, 2017, following discussions and negotiations, counsel for Defendants and counsel for plaintiff in the Rosenfeld Trust Action informed the Court that the Rosenfeld Trust PI Motion would be mooted by proposed supplemental disclosures Genworth agreed to file with the SEC, which disclosures were filed on Form 8-K and disseminated to Genworth shareholders on February 28, 2017 (the disclosures issued on February 24 and 28, 2017 are referred to collectively as the "Supplemental Disclosures").

16.    On March 7, 2017, the Court consolidated the Delaware Actions (as defined in paragraph 30(d) below) with the Virginia Actions (as defined in paragraph 30(t) below) under No. 3:17-CV-0059-REP.

17.    On March 7, 2017, the Genworth shareholders voted at the previously scheduled meeting in favor of the Merger.

18.    On April 17, 2017, Plaintiffs Rice and James moved for appointment as Lead Plaintiff as the James/Rice Investor Group. Thereafter, after extensive briefing, conferences with the Court (including on May 16, 2017), and oral argument (on July 5, 2017), followed by additional supplemental briefing, on August 25, 2017, the Court appointed Plaintiffs Rice and James as Lead Plaintiffs ("Lead Plaintiffs" as defined in paragraph 30(i) below) and appointed the law firms of Faruqi & Faruqi, LLP and Kahn Swick & Foti, LLC as Co-Lead Counsel and

MeyerGoergen PC as Liaison Counsel (together, "Plaintiffs' Counsel," as defined in paragraph 30(m) below) of the consolidated Actions.

19.     After arm's-length negotiations, the Parties entered into a Memorandum of Understanding ("MOU"), dated November 1, 2017, which reflected an agreement in principle to settle the Actions (as defined in paragraph 30(a) below) on the terms and subject to the conditions set forth therein, including certain discovery ("Confirmatory Discovery"), which included the production of documents and the taking of depositions, to confirm the fairness, adequacy and reasonableness of the terms of the settlement set forth in the MOU.

20.     During the months of November and December 2017, pursuant to the MOU, the Parties negotiated the terms of a protective order to govern the production of confidential information for Confirmatory Discovery purposes and engaged in Confirmatory Discovery, including depositions of two Genworth directors.

21.     During Confirmatory Discovery, a dispute arose regarding the discoverability of certain documents and redactions made thereto.

22.     On January 5, 2018, Plaintiffs' Counsel informed the Court of the discovery dispute.

23.     On March 16, 2018, following briefing and an *in camera* review of the documents in dispute by this Court, the Court entered an order resolving the discovery dispute and, on March 19, 2018, Defendants produced certain additional documents.

24.     Upon reviewing the additional documents, Plaintiffs' Counsel determined that Confirmatory Discovery had been completed and advised Defendants that they continued to believe that the terms of the Settlement were fair, reasonable and adequate.

25.    On March 21, 2018, the Court held a telephonic hearing with the Parties, at which the schedule for proceeding with the Settlement was agreed and was entered by the Court on March 22, 2018.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and among the Parties hereto:

## II.    DEFINITIONS

30.    As used in this Stipulation, the following terms shall have the following meanings:

a.    "Actions" means, collectively, the Virginia Actions and the Delaware Actions.

b.    "Court" means the United States District Court for the Eastern District of Virginia;

c.    "Defendants" means, individually and collectively, Thomas J. McInerney, James S. Riepe, William H. Bolinder, G. Kent Conrad, Melina E. Higgins, David M. Moffett, Thomas E. Moloney, James A. Parke, Debra J. Perry, Robert P. Restrepo Jr., and Genworth;

d.    "Delaware Actions" means *Rosenfeld Family Trust v. Genworth Financial, Inc. et al.*, No. 3:17-cv-00156-REP (filed January 25, 2017) (the "Rosenfeld Trust Action"), and *Chopp v. Genworth Financial, Inc., et al.*, No. 3:17-cv-00157-REP (filed February 6, 2017), which were transferred to the United States District Court for the Eastern District of Virginia from the United States District Court for the District of Delaware and, on March 7, 2017, consolidated with the Virginia Actions under No. 3:17-cv-00059-REP.

7

e.      "Effective Date of the Settlement" means the earliest business day after the occurrence of all of the events specified in paragraph 41;

f.      "Final Approval" means that the Court has entered a Final Judgment (as defined in paragraph 30(g) below) certifying the Settlement Class (defined in paragraph 30(q) below), approving the Settlement (defined in paragraph 30(p) below), dismissing the Actions with prejudice and with each of the Parties to bear its own costs (except as set forth in paragraphs 44-46 below), and providing for the releases set forth in paragraphs 35-38 below and the injunction set forth in paragraph 35 below, and that such Final Judgment is final and no longer subject to further appeal or review, whether by affirmance or exhaustion of any possible appeal or review, lapse of time, or otherwise.

g.      "Final Judgment" means the proposed Order and Final Judgment substantially in the form of Exhibit D attached hereto or as modified pursuant to agreement of the Parties;

h.      "Genworth" means Genworth Financial, Inc.;

i.      "Lead Plaintiffs" means Alexander Rice and Brian James;

j.      "Notice" means the Notice of Pendency and Proposed Settlement of Class Action that is to be sent to Settlement Class Members (as defined in paragraph 30(r)) substantially in the form of Exhibit C attached hereto or as modified pursuant to agreement of the Parties or order of the Court;

k.      "Order of Preliminary Approval" means the proposed Order Approving the Notice of Pendency and Proposed Settlement of Class Action substantially in the form of the proposed order attached hereto as Exhibit B or as modified pursuant to agreement of the Parties or order of the Court;

l.      "Parties" means collectively, each of the Defendants, and Lead Plaintiffs, on behalf of themselves and the Settlement Class Members (as defined in paragraph 30(l));

m.      "Plaintiffs' Counsel" means Co-Lead Counsel Faruqi & Faruqi, LLP (685 Third Avenue, 26th Floor, New York, NY 10017) and Kahn Swick & Foti, LLC (206 Covington Street, Madisonville, Louisiana 70447); Liaison Counsel MeyerGoergen PC (1802 Bayberry Court, Suite 200, Richmond, Virginia 23226); and their partners, officers, of counsel, principals, associates, and employees;

n.      "Released Claims" means the claims that were or could have been asserted under Section 14(a) of the Exchange Act by Plaintiffs in the Actions in their capacity as Genworth common stock shareholders against any of the Released Persons, in any court, tribunal, forum or proceeding based upon, arising out of, relating in any way to, or involving, directly or indirectly, the contents of the Proxy Statement; provided, however, for the avoidance of doubt, that the Released Claims shall not include the right to enforce the Settlement or any claims or rights of any Defendant against its insurers or insurers' successors or assignees; provided further, for the avoidance of doubt, that the Released Claims shall not include, and the Settlement shall not be construed to in any way settle, compromise, or otherwise affect, any derivative claims on behalf of and/or against Genworth, its current or former directors, or its current or former officers (specifically including, but not limited to, the derivative claims raised in *In re Genworth Financial, Inc. Consolidated Derivative Litigation*, C.A. No. 11901-VCS (Del. Ch.) and any other currently pending derivative suit on behalf of and/or against Genworth, its current or former directors, or its current or former officers), except derivative claims (if any)

9

under Section 14(a) of the Exchange Act relating to the Proxy Statement (which, to the best of the Parties' knowledge, information and belief, are not currently pending or asserted in any of the Actions or in any other action or proceeding);

o.      "Released Persons" means every entity or natural person named as a defendant in the complaint or amended complaint in any of the Actions, and each of their respective past, present, or future family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, legatees, devisees, foundations, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates, whether or not such persons and entities were named or appeared in the Actions;

p.      "Settlement" means the settlement contemplated by this Stipulation;

q.      "Settlement Class" means a non-opt-out class, certified for settlement purposes only, pursuant to Fed. R. Civ. P. 23, consisting of any and all record holders and beneficial owners of common stock of Genworth who held or owned such stock at any time during the period beginning on and including October 23, 2016, through and including the date of consummation of the Merger or, if the Merger is not consummated

for any reason, March 7, 2017 (the "Class Period"), including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, beneficiaries, legatees, devisees, assigns and transferees, immediate and remote, and any other person or entity acting for or on behalf of, or claiming under, any of the foregoing; provided that the Settlement Class shall not include Defendants and their immediate family members, any entity in which any Defendant has a controlling interest, and any successors-in-interest thereto; and provided further that certification of the Settlement Class is for settlement purposes only, is dependent on Final Approval, and shall be null and void in the event that Final Approval is not obtained;

      r.      "Settlement Class Members" means any persons who, or entities that, fall within the definition of the Settlement Class as set forth above in paragraph 30(q);

      s.      "Settlement Hearing" means the final hearing to be held by the Court to determine whether the Settlement (defined in paragraph 30(p)) should be approved and the Final Judgment (defined in paragraph 30(h)) should be entered;

      t.      "Virginia Actions" means (1) *Rice v. Genworth Fin., Inc.*, No. 3:17-cv-00059-REP (E.D. Va.) (filed January 23, 2017); (2) *James v. Genworth Fin., Inc.*, No. 3:17-cv-0078-REP (E.D. Va.) (filed January 25, 2017); and (3) *Ratliff v. Genworth Fin., Inc.*, No. 3:17-cv-00132-REP (E.D. Va.) (filed February 10, 2017), which were consolidated on February 22, 2017 under No. 3:17-cv-00059-REP.

## III.    TERMS OF THE SETTLEMENT

31.    In consideration for the full and final settlement and release of all Released Claims by Lead Plaintiffs and the Settlement Class, the dismissal with prejudice of the Actions,

11

and the other consideration set forth herein, and subject to the conditions set forth herein, Genworth made the Supplemental Disclosures to Genworth shareholders through two Current Reports on Form 8-Ks filed with the SEC on February 24, 2017 and February 28, 2017. Without admitting any wrongdoing, Defendants acknowledge that Genworth's decision to make the Supplemental Disclosures was the result of the pendency of the Actions, Defendants' desire to resolve the pending PI Motions and the Actions, and negotiations between counsel for Defendants and counsel for Plaintiffs. Lead Plaintiffs and Plaintiffs' Counsel believe that, with the dissemination of the Supplemental Disclosures, the grounds for seeking to enjoin the March 7, 2017 stockholder vote and for otherwise seeking relief in the Actions were mooted. Lead Plaintiffs and Plaintiffs' Counsel further believe that the dissemination of the Supplemental Disclosures fully resolved all of their claims under Section 14(a) of the Exchange Act that were or could have been asserted in the Actions.

32.     The Settlement set forth herein reflects the results of the Parties' negotiations and was reached after arm's-length negotiations between the Parties, all of whom were represented by counsel with extensive experience and expertise in shareholder class action litigation. All Parties represent that, during the negotiations, they understood the strengths and weaknesses of their respective claims and defenses.

33.     Lead Plaintiffs and Plaintiffs' Counsel believe that the claims they have asserted in the Actions have legal merit, and that their claims were brought in good faith, and the entry by Lead Plaintiffs into this Stipulation and Settlement is not an admission as to the lack of merit of any claims asserted in the Actions, but that they entered into the Stipulation and Settlement because they believe the Settlement provided substantial benefits to the shareholders of

Genworth, including an opportunity to make a more fully informed decision with respect to the Merger, and is fair, reasonable, and adequate.

34.     Defendants have denied, and continue to deny, any wrongdoing or liability with respect to all claims asserted in the Actions, including that they have committed any violations of law, that they have acted improperly in any way, that they have any liability or owe any damages of any kind to Lead Plaintiffs or the Settlement Class, and that any additional disclosures (including the additional disclosures made in the Supplemental Disclosures) are required under any applicable rule, regulation, statute, or law, but are entering into this Stipulation and Settlement solely because they consider it desirable that the litigation be settled and dismissed with prejudice in order to, among other things: (i) eliminate the burden, inconvenience, expense, distraction and uncertainty of further litigation; and (ii) finally resolve and terminate the Released Claims that were or could have been asserted against Defendants in the Actions.

35.     Upon the Effective Date of the Settlement, the Released Claims shall be fully and completely discharged, settled, released, and dismissed with prejudice on the merits.  The release provided for in this paragraph shall include all Released Claims on behalf of Lead Plaintiffs herein and all Settlement Class Members. Lead Plaintiffs and all members of the Settlement Class shall be forever barred and enjoined from instituting, prosecuting, participating in, continuing, maintaining or asserting any Released Claims, or assisting any person or entity in instituting, prosecuting, participating in, continuing, maintaining or asserting any Released Claims, against any of the Released Persons, whether directly or indirectly, on their own behalf or on behalf of any class or other person, in any jurisdiction.

36.     Upon the Effective Date of the Settlement, Defendants shall release Lead Plaintiffs and Plaintiffs' Counsel from any and all claims, complaints, petitions, or sanctions

13

arising out of the investigation, commencement, prosecution, settlement, or resolution of the Actions; provided, however, that Defendants shall retain the right to enforce the terms of this Stipulation and the Settlement and any claims or rights of any Defendant against its insurers or insurers' successors or assignees.

37.     The releases contemplated in paragraphs 35 and 36 of this Stipulation extend to, and Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants will be deemed to relinquish, to the extent it is applicable, and to the fullest extent permitted by law, the provisions, rights, and benefits of §1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

38.     In addition, Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants will be deemed to relinquish, to the extent they are applicable, and to the fullest extent permitted by law, the provisions, rights, and benefits of any law of any state or territory of the United States, federal law, or principle of common law, which is similar, comparable, or equivalent to §1542 of the California Civil Code.  Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants acknowledge that they may discover facts after completing Confirmatory Discovery and executing the Stipulation in addition to or different from those now known or believed to be true with respect to the settled claims, but that it is the intention of the Parties to hereby fully, finally, and forever settle and release any and all Released Claims. Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants acknowledge, and shall be deemed to have acknowledged, that the inclusion of

this paragraph was separately bargained for, is an integral element of the Settlement and was relied upon by each and all of the Parties in entering into this Stipulation and Settlement.

## IV.    SUBMISSION AND APPLICATION TO THE COURT

39.    No later than April 4, 2018, the Motion for Preliminary Approval of Class Action Settlement shall be filed along with a supporting brief and a proposed form of Preliminary Approval Order in the form attached hereto as Exhibit B, a proposed form of Notice of Settlement of Class Action in the form attached hereto as Exhibit C, and a proposed form of Final Judgment in the form attached hereto as Exhibit D.  The Parties will work cooperatively to obtain Final Approval of the Settlement and Stipulation and the dismissal of the Actions with prejudice.

40.    Genworth (or its successor(s) in interest or insurers) shall be responsible for providing Notice of the Settlement to the Settlement Class Members and shall pay all reasonable costs and expenses incurred in connection therewith.

## V.    CONDITIONS OF SETTLEMENT

41.    This Stipulation and the Settlement provided for herein are expressly conditioned on and subject to:  (i) final certification of the Settlement Class as a non-opt out class for settlement purposes only; (ii) Final Approval of the Settlement; (iii) entry of a Final Judgment substantially in the form of Exhibit D attached hereto; (iv) dismissal of the Actions with prejudice on the merits as to all Settlement Class Members (including Lead Plaintiffs) without the award of any damages, costs, or fees or the grant of further relief, except for the payments contemplated by this Stipulation; and (v) approval of a release of the Released Persons by the Court, in accordance with the definition of Released Claims and other provisions of this Stipulation.

42.     Defendants shall have the right to withdraw from and terminate the Settlement in the event that: (i) any court permanently or temporarily enjoins or otherwise precludes the Merger; (ii) Final Approval of the Settlement is not obtained for any reason; (iii) the Court does not enter a Final Judgment substantially in the form of Exhibit D attached hereto; or (iv) any Released Claim is commenced or prosecuted against any of the Released Persons in any court prior to Final Approval of the Settlement, and (following a motion by any Defendant) any such claim is not dismissed with prejudice or stayed in contemplation of dismissal with prejudice following Final Approval.  In the event that any such claim is commenced or prosecuted against any of the Released Persons, the Parties shall cooperate and use their best efforts to secure the dismissal with prejudice thereof (or a stay thereof in contemplation of dismissal with prejudice following Final Approval of the Settlement).

43.     This Stipulation and the Settlement shall be null and void and of no force or effect should the Settlement not obtain Final Approval for any reason, the Court declines to certify a Settlement Class as described in this Stipulation, or any of the conditions set forth in paragraph 41 not be met.  In any event of nullification of this Stipulation and Settlement: (i) the parties shall be deemed to be in the position they were in prior to the execution of the MOU; (ii) the statements made in the MOU, this Stipulation and in connection with the negotiation of the MOU, this Stipulation or the Settlement shall not be deemed to prejudice in any way the positions of the Parties with respect to the Actions, or any other litigation or judicial proceeding, or to constitute an admission of fact or wrongdoing by any of the Parties, and shall not be used or entitle any of the Parties to recover any fees, costs, or expenses incurred in connection with the Actions or in connection with any other litigation or judicial proceeding; and (iii) neither the existence of the MOU, this Stipulation or the Settlement, nor any of their contents or any

16

statements made in connection with their negotiation, or any other settlement communications, shall be admissible in evidence or shall be referred to for any purpose in the Actions or in any other litigation or judicial proceeding.

## VI.   ATTORNEYS' FEES

44.   The Parties will endeavor to negotiate in good faith regarding the amount of attorneys' fees, costs and expenses to be paid to Plaintiffs' Counsel (an "Agreed Fee").  In the event the Parties reach agreement on an Agreed Fee, Defendants shall not object to or oppose any application for an award of attorneys' fees, costs, and expenses made by Plaintiffs' Counsel in the Actions, provided that such an application is made in an amount no greater than the amount of the Agreed Fee.  If the Parties are unable to reach agreement with respect to the amount of such attorneys' fees, costs and expenses to be paid to Plaintiffs' Counsel before the preliminary approval hearing set for April 9, 2018, Lead Plaintiffs reserve the right to submit an application to the Court concurrent with their Motion for Final Approval seeking such reasonable attorneys' fees, costs, and expenses, and Defendants reserve the right to oppose any application by Plaintiffs' Counsel for an award of attorneys' fees, costs, and expenses, including any entitlement to an award of any attorneys' fees, costs, or expenses as well as the amount of any such award, and to make any and all arguments against entitlement to or the amount of the attorneys' fees, costs, and expenses as Defendants deem appropriate.  The Parties agree to stipulate to a mutually agreeable briefing schedule concerning any such contested fee application.  Genworth (or its successor(s), assign(s), and/or their insurer(s), and/or the insurer(s) of the Individual Defendants) shall pay the amount, if any, of the attorneys' fees, costs, and expenses approved or awarded by the Court to Plaintiffs' Counsel on behalf of all Defendants pursuant to written instructions provided jointly by Plaintiffs' Counsel within ten (10) business

17

days after the later of: (a) the Court's entry of the Final Judgment or judgment substantially in the form of Exhibit D awarding such attorneys' fees, costs, and expenses; or (b) receipt of written payment instructions from Plaintiffs' Counsel.  Such payment shall be subject to the joint and several obligation of Plaintiffs' Counsel to refund, within twenty (20) days, the amounts received and any interest accrued or accumulated thereon, if and to the extent that, as a result of any appeal, or successful collateral proceeding, any award of attorneys' fees, costs and expenses is reduced or reversed or if the award order does not become final, if the Settlement itself is voided by any Party as provided herein, or if the approval of the Settlement is later reversed by any court.

45.     Court approval of the Settlement shall not in any way be conditioned on Court approval of any application for an award of attorneys' fees, costs or expenses.  Any failure of the Court to approve any requested award of attorneys' fees, costs or expenses, in whole or in part, shall not affect the remainder of the Settlement.

46.     Plaintiffs' Counsel, jointly and in their sole discretion, shall determine the allocation among counsel for any plaintiffs in the Actions of any attorneys' fees, costs and expenses approved by the Court and paid by Defendants.  Defendants and their Released Persons shall have no responsibility for, and no liability with respect to, the allocation or distribution of any attorneys' fees, costs or expenses among counsel for any plaintiffs in the Actions or any other person or entity who may assert any claim thereto.  Except as provided herein, the Released Persons shall bear no other expenses, costs, damages, or fees alleged or incurred by Lead Plaintiffs or any plaintiffs in connection with the Actions, or by any Settlement Class Member, or by any of their attorneys, experts, advisors, agents, or representatives.  In the event that the Settlement is not finalized for any reason, Lead Plaintiffs reserve the right to pursue a mootness

fee application in connection with the Supplemental Disclosures, and Defendants reserve the right to oppose any such mootness fee application.

## VII.   MISCELLANEOUS PROVISIONS

47.   Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, acknowledge and agree that the parties to the Merger may make amendments or modifications to the Merger, including amendments or modifications to the Merger Agreement, before the effective date of the Merger.  Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, agree that they will not challenge or object to any such amendments or modifications so long as such amendments or modifications do not change the Merger Consideration to the Settlement Class's detriment, materially change any other terms of the Merger that would be materially adverse to the Settlement Class's interests, or materially conflict with this Stipulation.

48.   Plaintiffs' Counsel further represent that Lead Plaintiffs are and have been continuous shareholders of Genworth at all relevant times and have not assigned, encumbered, or otherwise transferred, in whole or in part, the claims in the Actions.

49.   The Parties agree that, pending Final Approval, all proceedings in the Actions, except those related to the Settlement, shall be stayed.  Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, agree not to initiate, assert, commence, prosecute, assist, instigate, continue, or in any way participate in any other proceedings in any forum asserting any Released Claims against any Released Person, other than those that are incident to the Settlement itself.  The Parties also agree to cooperate to prevent, stay or seek dismissal of or oppose entry of any interim or final relief in favor of any Settlement Class Member in any other litigation against any of the Parties to this Stipulation which challenges the Settlement or otherwise involves a Released Claim.

50.     The provisions contained in this Stipulation shall not be deemed or constitute a presumption, concession or an admission by Defendants of any fault, liability or wrongdoing as to any facts or claims that have been or might be alleged or asserted in the Actions, and shall not be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person against any Defendant in the Actions or in any other action or proceeding, whether civil, criminal or administrative, for any purpose other than as provided for expressly herein. Nor shall the provisions contained in this Stipulation be deemed a presumption, concession, or admission by Lead Plaintiffs concerning the merits, or lack thereof, of any facts or claims alleged or asserted in the Actions, or any other actions or proceedings, or that any of the Supplemental Disclosures are not material.

51.     This Stipulation constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all written or oral communications, agreements or understandings that may have existed prior to the execution of this Stipulation.  This Stipulation may not be amended, nor any of the provisions be waived, except by a writing signed by all of the Parties hereto.

52.     This Stipulation, and all rights and powers granted hereby, shall be binding on and inure to the benefit of the Parties hereto and their respective agents, executors, heirs, legal representatives, successors and assigns.

53.     This Stipulation shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to any state's principles governing choice of law.

54.     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement.  Each of the Parties hereto irrevocably and unconditionally submits to and accepts the exclusive jurisdiction of the Court for any action, suit,

or proceeding arising out of relating in any way to this Stipulation or the Settlement, or any matter relating to them, and waives any objection that he, she or it may have to the laying of venue in the Court or that the Court is an inconvenient forum or does not have personal jurisdiction.

55.     Released Persons who are not Parties hereto shall be third-party beneficiaries under this Stipulation entitled to enforce the Settlement in accordance with its terms.

56.     This Stipulation will be executed by counsel for the Parties, each of whom represents and warrants that he has the authority from his client(s) to enter this Stipulation.

57.     This Stipulation may be signed in any number of counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument. Signed signature pages of this Stipulation may be delivered by facsimile, e-mail or PDF transmission, which will constitute complete delivery without any necessity for delivery of originally signed signature pages in order for this to constitute a binding agreement.

**Counsel for Plaintiffs:**

Scott A. Simmons (VSB 37744)
Christopher J. Habenicht (VSB 15146)
MeyerGoergen PC
1802 Bayberry Court, Suite 200
Richmond, Virginia 23226
804.288.3600
Fax: 804.565.1231
simmons@mg-law.com
habenicht@mg-law.com

James M. Wilson, Jr.
Faruqi & Faruqi, LLP
685 Third Avenue, 26th Fl.
New York, NY 10017
212-983-9330
Fax: 212-983-9331
Email: jwilson@faruqilaw.com

21

Michael J. Palestina, Esq.
Kahn Swick & Foti, LLC
206 Covington Street
Madisonville, LA 70447
504-455-1400
Fax: (504) 455-1498
Michael.Palestina@ksfcounsel.com

*Plaintiffs' Counsel*

**Counsel for Genworth, Thomas J. McInerney,**
**James S. Riepe, William H. Bolinder, G. Kent**
**Conrad, Melina E. Higgins, David M. Moffett,**
**Thomas E. Moloney, James A. Parke, Debra**
**J. Perry, and Robert P. Restrepo Jr.:**

Greg A. Danilow (*pro hac vice*)
Evert J. Christensen, Jr. (*pro hac vice*)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
212-310-8000
Fax: (212) 310-8007
greg.danilow@weil.com
evert.christensen@weil.com

Edward J. Fuhr (VSB #28082)
George P. Sibley III (VSB #48773)
Johnathon E. Schronce (VSB #80903)
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
804-788-8200
Fax: (804) 788-8218
efuhr@hunton.com
gsibley@hunton.com
jschronce@hunton.com

*Defendants' Counsel*

23

# EXHIBIT A

8-K 1 d353916d8k.htm 8-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

---

# FORM 8-K

---

**CURRENT REPORT
PURSUANT TO SECTION 13 OR 15(d)
OF THE SECURITIES EXCHANGE ACT OF 1934**

**February 24, 2017
Date of Report
(Date of earliest event reported)**

---



# GENWORTH FINANCIAL, INC.

**(Exact name of registrant as specified in its charter)**

---

| **Delaware** | **001-32195** | **80-0873306** |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Commission File Number) | (I.R.S. Employer Identification No.) |

| **6620 West Broad Street, Richmond, VA** | **23230** |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

**(804) 281-6000**
**(Registrant's telephone number, including area code)**

**Not Applicable**
**(Former Name or Former Address, if Changed Since Last Report)**

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2 below):

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 8.01     Other Events**

On January 25, 2017, Genworth Financial, Inc. ("Genworth") filed a definitive proxy statement on Schedule 14A (the "Definitive Proxy Statement") with the Securities and Exchange Commission (the "SEC") in connection with the solicitation of proxies for a special meeting of Genworth's stockholders to be held on March 7, 2017, where, among other things, stockholders will vote on a proposal to adopt the Agreement and Plan of Merger, dated as of October 21, 2016 (as it may be amended from time to time) by and among Genworth, Asia Pacific Global Capital Co., Ltd. ("Asia Pacific") and Asia Pacific Global Capital USA Corporation, an indirect, wholly owned subsidiary of Asia Pacific ("Merger Sub"). Genworth is electing to make supplemental disclosures set forth below.

**SUPPLEMENT TO DEFINITIVE PROXY STATEMENT**

*This supplemental information should be read in conjunction with the Definitive Proxy Statement, which should be read in its entirety. Page references in the below disclosures are to the Definitive Proxy Statement, and defined terms used but not defined herein have the meanings set forth in the Definitive Proxy Statement. Without admitting in any way that the disclosures below are material or otherwise required by law, Genworth makes the following amended and supplemental disclosures.*

**The section of the Definitive Proxy Statement entitled: "Summary—Litigation Related to the Merger (see page 102)" on page 13 of the Definitive Proxy Statement is amended and restated as follows:**

On January 12, 2017, two putative Genworth stockholders filed a complaint in the Delaware Court of Chancery, captioned *Salberg v. Genworth Financial, Inc.*, C.A. No. 2017-0018-JRS, seeking an inspection of Genworth books and records, pursuant to 8 *Del. C.* § 220, relating to the Board's consideration of derivative claims belonging to Genworth in the context of the merger. Genworth previously provided the stockholders with certain books and records in response to a demand for inspection pursuant to 8 *Del. C.* § 220. On February 6, 2017, Genworth filed an answer to that complaint.

On January 23, 2017, a putative stockholder class action lawsuit, captioned Rice v. Genworth Financial Incorporated et al, Case No. 3:17-cv-00059-REP, was filed in the United States District Court for the Eastern District of Virginia (Richmond Division), against Genworth and the members of the Board. On January 25, 2017, two putative stockholder class action lawsuits, captioned James v. Genworth Financial, Inc. et al, Case No. 3:17-cv-00078-REP, and Rosenfeld Family Trust v. Genworth Financial, Inc. et al, Case No. 1:17-cv-00073-GMS, were filed in the United States District Court for the Eastern District of Virginia (Richmond Division) and the United States District Court for the District of Delaware, respectively, against Genworth and the members of the Board. On February 6, 2017, a putative stockholder class action lawsuit, captioned Chopp v. Genworth Financial, Inc. et al, Case No. 1:17-cv-00125-GMS, was filed in the United States District Court for the District of Delaware, against Genworth and the members of the Board. On February 10, 2017, a putative stockholder class action lawsuit, captioned Ratliff v. Genworth Financial, Inc. et al, Case No. 3:17-cv-00132-REP, was filed in the United States District Court for the Eastern District of Virginia (Richmond Division), against Genworth and the members of the Board. The complaints in all five actions allege, among other things, that the preliminary proxy statement filed by Genworth with the SEC on December 21, 2016 contains false and/or materially misleading statements and/or omits material information. The complaints in all five actions assert claims under Sections 14(a) and 20(a) of the Exchange Act, and seek equitable relief, including declaratory and injunctive relief, and an award of attorneys' fees and expenses. On February 2, 2017, the plaintiff in the Rice action filed a motion for a preliminary injunction to enjoin the March 7, 2017 stockholder vote on the merger pending additional disclosure to Genworth's stockholders concerning the merger. On February 10, 2017, the defendants filed an opposition to the preliminary injunction motion in the Rice action. Also on February 10, 2017, the plaintiff in the Rosenfeld Family Trust action filed a motion for a preliminary injunction to enjoin the March 7, 2017 stockholder vote on the merger pending additional disclosure to Genworth's stockholders concerning the merger. On February 14, 2017, the defendants filed a motion to transfer the Rosenfeld Family Trust action to the Eastern District of Virginia. On February 15, 2017, the defendants filed a motion to transfer the Chopp action to the Eastern District of Virginia. On February 21, 2017, the parties to the Eastern District of Virginia actions (Rice, James and Ratliff) reached an agreement in principle to resolve the pending preliminary injunction motion in the Rice action through additional disclosure prior to the March 7, 2017 stockholder vote on the merger. On February 22, 2017, the court in the Eastern District of Virginia consolidated the Rice, James and Ratliff actions, and the plaintiffs withdrew the preliminary injunction motion in the Rice action in consideration of agreed disclosures to be filed in this Form 8-K. Also on February 22, 2017, the court in the District of Delaware suspended briefing on the motion for preliminary injunction in the Rosenfeld Family Trust action and entered an order transferring the Rosenfeld Family Trust and Chopp actions to the Eastern District of Virginia. On February 23, 2017, the court in the Eastern District of Virginia received the transferred Rosenfeld Family Trust and Chopp actions, assigned the actions case numbers 3:17-cv-000156-REP and 3:17-cv-000157-REP, respectively, consolidated the Rosenfeld Trust and Chopp actions, and set the motion for preliminary injunction filed in the Rosenfeld Family Trust action for hearing on March 1, 2017.

**The section of the Definitive Proxy Statement entitled: "The Merger—Background of the Merger" is amended and supplemented as follows:**

The disclosure in the second full sentence of the first paragraph on page 40 of the Definitive Proxy Statement is amended and restated as follows:

During this time, the Board and, after it was established in March 2016, the Strategic Transactions Committee, comprised of the following independent directors: Mr. James S. Riepe, Ms. Melina E. Higgins and Mr. James A. Parke (which we refer to as the "***STC***") (the formation of which is described below), were kept apprised of material developments with respect to the discussions and negotiations relating to the L&A Plus LTC Separation Transaction.

The disclosure on page 47 of the Definitive Proxy Statement is amended and supplemented by adding the following new sentence after the last sentence on such page:

No reason was provided by Company D or its representatives to Genworth or its financial advisors as to why it was no longer interested in pursuing a transaction with Genworth.

The disclosure in the last sentence of the fourth full paragraph on page 48 of the Definitive Proxy Statement is amended and restated as follows:

At the May 11-12, 2016 meeting, the Board appointed another independent director, Mr. David M. Moffett, as an alternate member of the STC, in part, to address any potential availability constraints due to the frequency of the STC meetings.

The disclosure on page 60 of the Definitive Proxy Statement is amended and supplemented by adding the following two new sentences after the last sentence of the first paragraph on such page:

Specifically: Goldman disclosed to Genworth, among other things, that as of such date no core member of its Investment Banking Division team working with Genworth at that time in connection with the merger owned any direct debt, equity or credit derivatives or convertible instruments (collectively, "investments") with a value in excess of $10,000 in Genworth, China Oceanwide or Company A and, as of such date, none of Goldman's Investment Banking Division, funds in which Goldman's Investment Banking Division had a direct investment, or funds managed by Goldman's Merchant Banking Division had a direct investment in Genworth, China Oceanwide or Company A or, if applicable, in funds managed by China Oceanwide or Company A; and Lazard disclosed to Genworth, among other things, that as of such date neither Lazard Group LLC or its subsidiaries nor, based on the information provided to Lazard, Lazard's team members advising Genworth with respect to the merger at that time had any direct proprietary holdings in the securities of China Oceanwide or its affiliates.

**The section of the Definitive Proxy Statement entitled: "The Merger—Opinions of Genworth's Financial Advisors" is amended and supplemented as follows:**

The disclosure in the last paragraph on page 74 of the Definitive Proxy Statement titled "Present Value of Future Share Price Analysis" is amended and supplemented as follows:

*Present Value of Future Share Price Analysis.* Goldman Sachs performed analyses of the implied present value of the future share price of Genworth common stock, which is designed to indicate the present value of a theoretical future value of Genworth's equity as a function of its estimated future book value per share and an assumed range of price to book value multiples. For these analyses, Goldman Sachs used the Base Forecast for the one year periods ending December 31 of each of the years 2018 through 2021 and the estimated number of fully diluted outstanding shares of Genworth as of December 31 of each of the years 2017 through 2020 as provided by Genworth's management. Goldman Sachs performed a regression analysis because, based on its experience and professional judgment, it was relevant to compare the implied relationship between reported price as a multiple of book value per share (excluding accumulated other comprehensive income, which we refer to as "***ex. AOCI***", and, collectively, as the "***P/BV (ex. AOCI)***") and the estimated return on average equity for 2017 (which we refer to as the "***2017E ROAE***") for selected companies in the U.S. life insurance industry. To perform this regression analysis, Goldman Sachs first compared the implied relationship between the P/BV (ex. AOCI) as of June 30, 2016 for the selected companies in the U.S. life insurance industry and the estimated 2017E ROAE for the selected companies using estimates published by Institutional Brokers' Estimate System (which we refer to as "***IBES***") as of October 18, 2016. The names of the selected companies included in the regression analysis and the P/BV (ex. AOCI) calculated by Goldman Sachs are listed below:

| Selected Company | 2Q' 2016 P/BV (ex. AOCI) Multiple |
|---|---|
| Metlife, Inc. | 0.83x |
| Prudential Financial, Inc. | 1.18x |
| Ameriprise Financial, Inc. | 2.47x |
| Principal Financial Group, Inc. | 1.49x |
| Lincoln National Corporation | 0.90x |
| Unum Group | 0.98x |
| Torchmark Corporation | 2.04x |
| VOYA Financial, Inc. | 0.52x |
| CNO Financial Group, Inc. | 0.76x |
| Primerica, Inc. | 2.30x |
| FBL Financial Group, Inc. | 1.61x |
| American Equity Investment Life Holding Company | 0.93x |

The disclosure on page 75 of the Definitive Proxy Statement is amended and supplemented by adding the following sentence[s] after the first sentence of the second full paragraph on such page:

R-squared is a statistical measure of the relationship of specified data to a regression line.

The disclosure in the first sentence of the third full paragraph on page 75 of the Definitive Proxy Statement is amended and supplemented as follows:

The estimated P/BV multiples for each of the years 2017 through 2020 implied by applying the current discount were then applied to estimated book value per share of Genworth as set forth in the Base Forecast for each of the years 2017 through 2020 to derive a range of implied future stock prices for Genworth for each of 2017 through 2020, which Goldman Sachs then discounted back to present value, using an illustrative discount rate of 20.1%, reflecting an estimate of Genworth's cost of equity and derived by the application of the capital asset pricing model, which requires certain company-specific inputs, including a beta for Genworth, as well as certain financial metrics for the United States financial markets generally.

The disclosure on page 76 of the Definitive Proxy Statement is amended and supplemented by adding the following sentence after the first sentence of the second full paragraph on such page:

The range of illustrative P/BV multiples was derived by Goldman Sachs based on its experience and professional judgment and taking into account, among other factors, the specific circumstances of U.S. Life.

The disclosure in the last sentence of the second full paragraph on page 75 of the Definitive Proxy Statement is amended and supplemented as follows:

Goldman Sachs used a range of discount rates from 11.0% to 13.0%, representing estimates of Genworth's weighted average cost of capital and derived by the application of the capital asset pricing model, which requires certain company-specific inputs, including Genworth's capital structure weightings, the cost of long-term debt, future applicable marginal cash tax rate and a beta for Genworth, as well as certain financial metrics for the United States financial markets generally.

The disclosure on page 76 of the Definitive Proxy Statement is amended and supplemented by adding the following sentence after the first sentence of the third full paragraph on such page:

The range of one-year forward P/E multiples was derived by Goldman Sachs based on its experience and professional judgment and taking into account, among other factors, the specific circumstances of US MI.

The disclosure in the second sentence of the third full paragraph on page 76 of the Definitive Proxy Statement is amended and supplemented as follows:

Goldman Sachs then discounted the estimated dividend streams from Genworth's assumed 80.1% ownership in US MI for the period 2017 through 2020 as set forth in the Base Forecast and range of illustrative terminal values to derive illustrative present values, as of January 1, 2017, of Genworth's assumed 80.1% ownership stake in US MI. Goldman Sachs used a range of discount rates from 11.0% to 13.0%, representing estimates of Genworth's weighted average cost of capital and derived by the application of the capital asset pricing model, which requires certain company-specific inputs, including Genworth's capital structure weightings, the cost of long-term debt, future applicable marginal cash tax rate and a beta for Genworth, as well as certain financial metrics for the United States financial markets generally.

The disclosure on page 76 of the Definitive Proxy Statement is amended and supplemented by adding the following sentence after the second sentence of the fourth full paragraph on such page:

The range of estimated P/E multiples was derived by Goldman Sachs based on its experience and professional judgment and taking into account, among other factors, the specific circumstances of US MI.

4

The disclosure on page 76 of the Definitive Proxy Statement is amended and supplemented by adding the following sentence after the first sentence of the fifth full paragraph on such page:

The range of one-year forward P/E exit multiples was derived by Goldman Sachs based on its experience and professional judgment and taking into account, among other factors, the specific circumstances of Genworth Australia.

The disclosure in the last sentence of the fifth full paragraph on page 76 of the Definitive Proxy Statement is amended and supplemented as follows:

Goldman Sachs used a range of discount rates from 11.0% to 13.0%, representing estimates of Genworth's weighted average cost of capital and derived by the application of the capital asset pricing model, which requires certain company-specific inputs, including Genworth's capital structure weightings, future applicable marginal cash tax rate and a beta for Genworth, as well as certain financial metrics for the United States financial markets generally.

The disclosure in the last paragraph on page 76 of the Definitive Proxy Statement is amended and supplemented as follows:

Goldman Sachs also derived an implied value for Corporate and Other, which resulted in an implied valuation of $(1.266 billion), using the following data provided by Genworth's management: (i) pro forma estimates, as of January 1, 2017, of Genworth Holdings' cash (excluding restricted cash) and debt valued at book value as provided by Genworth management (including estimates for the cash proceeds to Genworth Holdings from the assumed sale of its 57.3% stake in Genworth Canada, a one-time dividend paid by US MI to Genworth Holdings from the proceeds of an assumed debt issuance by US MI and cash proceeds to Genworth Holdings from its assumed sale of 19.9% of the outstanding shares of US MI in an initial public offering of US MI effective January 1, 2017), (ii) the net present value of certain net deferred tax assets as of December 31, 2016 (valued using a discount rate of 11.6%, representing an estimate of Genworth's weighted average cost of capital and derived by the application of the capital asset pricing model, which requires certain company-specific inputs, including Genworth's capital structure weightings, the cost of long-term debt, future applicable marginal cash tax rate and a beta for Genworth, as well as certain financial metrics for the United States financial markets generally, using the estimated utilization of such tax assets reflected in the Base Forecast) and (iii) the net present value as of December 31, 2016 of certain net accrued Genworth liabilities (valued using a discount rate of 11.6%, representing an estimate of Genworth's weighted average cost of capital and derived by the application of the capital asset pricing model, which requires certain company-specific inputs, including Genworth's capital structure weightings, the cost of long-term debt, future applicable marginal cash tax rate and a beta for Genworth, as well as certain financial metrics for the United States financial markets generally, using the estimated net payment of such liabilities reflected in the Base Forecast).

The disclosure in the first full paragraph on page 81 of the Definitive Proxy Statement is amended and restated with the following paragraphs:

Lazard calculated and compared various financial multiples for each of the selected companies and Genworth based on estimates published by IBES as of October 18, 2016, including, among other things:

- closing price per share as of October 18, 2016, as a multiple of estimated 2017 earnings per share (which we refer to as "***P/E 2017E***");

- closing price per share as of October 18, 2016, as a multiple of estimated 2018 earnings per share (which we refer to as "***P/E 2018E***"); and

- closing price per share as of October 18, 2016, as a multiple of P/BV (ex. AOCI) as of June 30, 2016 (which we refer to as "***2Q' 2016* P/BV (ex AOCI)**").

5

The names of the selected companies in the life insurance sector used in this selected companies analysis with respect to Genworth and the P/E 2017E, P/E 2018E and 2Q' 2016 P/BV (ex. AOCI) ratios for the selected companies calculated by Lazard in connection with this analysis were as follows:

| Selected Company | P/E 2017E | P/E 2018E | 2Q' 2016 P/BV (ex. AOCI) |
|---|---|---|---|
| Metlife, Inc. | 8.2x | 7.5x | 0.83x |
| Prudential Financial, Inc. | 8.2x | 7.6x | 1.18x |
| Ameriprise Financial, Inc. | 9.3x | 8.3x | 2.47x |
| Principal Financial Group, Inc. | 11.1x | 10.3x | 1.49x |
| Lincoln National Corporation | 7.1x | 6.6x | 0.90x |
| Unum Group | 9.0x | 8.4x | 0.98x |
| Torchmark Corporation | 13.6x | 12.8x | 2.04x |
| VOYA Financial, Inc. | 8.0x | 6.5x | 0.52x |
| CNO Financial Group, Inc. | 10.4x | 9.5x | 0.76x |
| Primerica, Inc. | 11.3x | 10.4x | 2.30x |
| FBL Financial Group, Inc. | 15.1x | 15.4x | 1.61x |
| American Equity Investment Life Holding Company | 7.4x | 7.3x | 0.93x |

The disclosure in the second full paragraph on page 81 of the Definitive Proxy Statement is amended and supplemented as follows:

The names of the selected companies in the mortgage insurance sector used in this selected companies analysis with respect to Genworth and the P/E 2017E, P/E 2018E and 2Q' 2016 P/BV (ex. AOCI) ratios for the selected companies calculated by Lazard in connection with this analysis were as follows:

| Selected Company | P/E 2017E | P/E 2018E | 2Q' 2016 P/BV (ex. AOCI) |
|---|---|---|---|
| Radian Group Inc. | 8.2x | 7.2x | 1.15x |
| MGIC Investment Corporation | 8.6x | 7.9x | 1.17x |
| Essent Group Ltd. | 10.7x | 9.7x | 2.17x |
| NMI Holdings, Inc. | 8.2x | 7.3x | 1.19x |

The disclosure on page 81 of the Definitive Proxy Statement is amended and supplemented by adding the following sentence to the beginning of the third full paragraph on such page:

Lazard also calculated P/E 2017E, P/E 2018E and 2Q' 2016 P/BV (ex. AOCI) ratios for Genworth, which were 5.5x, 5.4x and 0.26x, respectively.

The disclosure in the fourth full paragraph on page 81 of the Definitive Proxy Statement is hereby deleted.

The disclosure in the first full paragraph on page 82 of the Definitive Proxy Statement is amended and restated as follows:

Lazard performed a regression analysis because, based on its experience and professional judgment, it was relevant to compare the implied relationship between estimated return on average equity for 2017 and the ratio of P/BV (ex. AOCI) for the selected companies in the life insurance sector. To perform this regression analysis, Lazard first compared the implied relationship between the P/BV (ex. AOCI) as of June 30, 2016 for the selected companies in the life insurance sector and the estimated 2017E ROAE for the selected companies in the life insurance sector using estimates published by IBES as of October 18, 2016. Based on this analysis and assuming the current discount at which Genworth trades to the regression line (28.4% discount), Lazard noted that (i) the 2017 return on average equity set forth in the Base Forecast implied a ratio of P/BV per share for Genworth of 0.32x and (ii) the 2018 return on average equity set forth in the Base Forecast implied a ratio of P/BV per share for Genworth of 0.31x.

The disclosure on page 83 of the Definitive Proxy Statement is amended and supplemented by adding the following sentence after the first sentence of the second full paragraph on such page:

The P/BV (ex. AOCI) multiples were derived by Lazard using its experience and professional judgment taking into account, among other factors, the specific circumstances of U.S. Life.

The disclosure in the last sentence of the second full paragraph on page 83 of the Definitive Proxy Statement is amended and supplemented as follows:

Lazard used a range of discount rates from 10.0% to 12.0%, representing estimates of Genworth's weighted average cost of capital, derived from a number of factors using the capital asset pricing model, which takes into account certain metrics, including, among others, the applicable risk-free rate of return, unlevered risk profile and pre-tax cost of long-term debt.

The disclosure on page 83 of the Definitive Proxy Statement is amended and supplemented by adding the following sentence after the first sentence of the third full paragraph on such page:

The one-year forward P/E multiples were derived by Lazard using its experience and professional judgment taking into account, among other factors, the specific circumstances of US MI.

The disclosure in the last sentence of the third full paragraph on page 83 of the Definitive Proxy Statement is amended and supplemented as follows:

Lazard used a range of discount rates from 8.5% to 10.0%, representing estimates of US MI's cost of equity, calculated by utilizing the capital asset pricing model, which uses a "beta" metric, a risk-free rate of return, a market risk premium and a marginal tax rate, which resulted in implied present values of Genworth's assumed 80.1% ownership stake in US MI ranging from $1.419 billion to $1.808 billion, and a range of discount rates from 10.0% to 12.0%, representing estimates of Genworth's weighted average cost of capital, derived from a number of factors using the capital asset pricing model, which takes into account certain metrics, including, among others, the applicable risk-free rate of return, unlevered risk profile and pre-tax cost of long-term debt, which resulted in implied present values of Genworth's assumed 80.1% ownership stake in US MI ranging from $1.328 billion to $1.717 billion.

The disclosure on page 83 of the Definitive Proxy Statement is amended and supplemented by adding the following sentence after the first sentence of the fourth full paragraph on such page:

The one-year forward P/E multiples were derived by Lazard using its experience and professional judgment taking into account, among other factors, the specific circumstances of Genworth Australia.

The disclosure in the last sentence of the fourth full paragraph on page 83 of the Definitive Proxy Statement is amended and supplemented as follows:

Lazard used a range of discount rates from 9.0% to 10.5%, representing estimates of Genworth Australia's cost of equity calculated by utilizing the capital asset pricing model, which uses a "beta" metric, a risk-free rate of return, market risk premium and a marginal tax rate, which resulted in implied present values of Genworth's 52% ownership stake in Genworth Australia ranging from $506 million to $576 million, and a range of discount rates from 10.0% to 12.0%, representing estimates of Genworth's weighted average cost of capital, derived from a number of factors using the capital asset pricing model, which takes into account certain metrics, including, among others, the applicable risk-free rate of return, unlevered risk profile and pre-tax cost of long-term debt, which resulted in implied present values of Genworth's 52% ownership stake in Genworth Australia ranging from $488 million to $561 million.

**The section of the Definitive Proxy Statement entitled: "The Merger—Certain Genworth Unaudited Financial Projections" is amended and supplemented as follows:**

The table appearing on page 89 of the Definitive Proxy Statement titled "Financial Metrics" under the section titled "Summary of Genworth's Management Base Forecast" thereof is amended and supplemented by adding three rows therein to show (i) Book Value (excluding AOCI), (ii) U.S. Life Book Value (excluding AOCI) and (iii) Shares Outstanding (on a fully diluted basis), in each case, for the projected fiscal years 2016 through 2021, as prepared by Genworth's management:

### Summary of Genworth's Management Base Forecast

**Financial Metrics**

| | | | Projected Fiscal Year | | | |
|---|---|---|---|---|---|---|
| (in millions, unless per share amounts) | 2016E | 2017E | 2018E | 2019E | 2020E | 2021E |
| Non-GAAP Operating Earnings (Loss) per Share | $ (0.41) | $ 0.68 | $ 0.66 | $ 0.81 | $ 0.96 | $ 0.98 |
| Non-GAAP Operating Return on Equity ("ROE") | (2.2)% | 3.8% | 3.6% | 4.2% | 4.8% | 4.7% |
| Book Value (excluding AOCI) Per Share | $17.72 | $18.23 | $18.73 | $19.52 | $ 20.40 | $ 21.36 |
| Book Value (excluding AOCI) | $8,897 | $9,127 | $9,426 | $9,807 | $10,264 | $10,730 |
| U.S. Life Book Value (excluding AOCI) | $6,430 | $6,537 | $6,635 | $6,821 | $ 7,039 | $ 7,223 |
| Cash Flow Coverage (1) | 0.8 | 0.6 | 1.1 | 0.9 | 0.8 | 0.7 |
| Non-GAAP Leverage Ratio | 25.8% | 18.2% | 17.9% | 19.3% | 17.7% | 13.9% |
| MI Dividends (2) | $ 222 | $ 424 | $ 209 | $ 187 | $ 167 | $ 128 |
| Holding Company Cash ($ in billions) | $ 1.5 | $ 0.4 | $ 0.4 | $ 0.9 | $ 0.8 | $ 0.3 |
| Holding Company Debt ($ in billions) | $ 3.8 | $ 2.3 | $ 2.3 | $ 2.7 | 2.5 | 1.9 |
| Debt to Capital Ratio | 31% | 23% | 22% | 24% | 22% | 17% |
| Shares Outstanding (Diluted) | 502 | 501 | 503 | 502 | 503 | 502 |

(1) Cash Flow Coverage means the difference of the aggregate dividends paid to Genworth Holdings from Genworth Holdings' subsidiaries less cash contributed by Genworth Holdings to its subsidiaries in the same period, divided by interest expense and estimated corporate overhead costs of Genworth Holdings that are not reimbursed by such subsidiaries. The 2016 Cash Flow Coverage metric excludes the $175 million cash contribution from Genworth Holdings to GLIC to facilitate the unstacking. Including this $175 million cash contribution from Genworth Holdings to GLIC would make the 2016 Cash Flow Coverage 0.2. The 2017 Cash Flow Coverage metric excludes a $300 million dividend paid by US MI to Genworth Holdings from the proceeds of an assumed debt issuance by US MI. Including this $300 million dividend from US MI to Genworth Holdings would make the 2017 Cash Flow Coverage 2.3. Cash Flow Coverage is an operating measure that is not defined by GAAP and all of the inputs are calculated in accordance with GAAP. Accordingly, Cash Flow Coverage is not a non-GAAP financial measure.

(2)  MI Dividends reflects the projected dividends for each of Genworth Australia, US MI, and in the case of fiscal 2016 only, Genworth Canada, in the aggregate. The Base Forecast assumes there will be no dividends from U.S. Life to Genworth Holdings during the forecast period. The projected dividends for 2017E include a $300 million dividend paid by US MI to Genworth Holdings from the proceeds of an assumed debt issuance by US MI.

The disclosure on page 89 of the Definitive Proxy Statement under the section titled "Summary of Genworth's Management Base Forecast" is further amended and supplemented to insert the following table after the table titled "Consolidated Non-GAAP Operating Income (Loss)":

**Corporate and Other Estimated Pro Forma Balances**

| ($ in millions) | 2016E |
|---|---|
| Net Accrued HR Expenses | $(216) |
| Holding Company Tax Matters Liabilities | $  (89) |

**The section of the Definitive Proxy Statement entitled: "The Merger—Litigation Related to the Merger" on page 102 of the Definitive Proxy Statement is amended and restated as follows:**

**Litigation Related to the Merger**

On January 12, 2017, two putative Genworth stockholders filed a complaint in the Delaware Court of Chancery, captioned *Salberg v. Genworth Financial, Inc.*, C.A. No. 2017-0018-JRS, seeking an inspection of Genworth books and records, pursuant to 8 *Del. C.* § 220, relating to the Board's consideration of derivative claims belonging to Genworth in the context of the merger. Genworth previously provided the stockholders with certain books and records in response to a demand for inspection pursuant to 8 *Del. C.* § 220. On February 6, 2017, Genworth filed an answer to that complaint.

On January 23, 2017, a putative stockholder class action lawsuit, captioned Rice v. Genworth Financial Incorporated, Case No. 3:17-cv-00059-REP, was filed in the United States District Court for the Eastern District of Virginia (Richmond Division), against Genworth and the members of the Board. On January 25, 2017, two putative stockholder class action lawsuits, captioned James v. Genworth Financial, Inc., Case No. 3:17-cv-00078-REP, and Rosenfeld Family Trust v. Genworth Financial, Inc., Case No. 1:17-cv-00073-GMS, were filed in the United States District Court for the Eastern District of Virginia (Richmond Division) and the United States District Court for the District of Delaware, respectively, against Genworth and the members of the Board. On February 6, 2017, a putative stockholder class action lawsuit, captioned Chopp v. Genworth Financial, Inc., Case No. 1:17-cv-00125-GMS, was filed in the United States District Court for the District of Delaware, against Genworth and the members of the Board. On February 10, 2017, a putative stockholder class action lawsuit, captioned Ratliff v. Genworth Financial, Inc., Case No. 3:17-cv-00132-REP, was filed in the United States District Court for the Eastern District of Virginia (Richmond Division), against Genworth and the members of the Board. The complaints in all five actions allege, among other things, that the preliminary proxy statement filed by Genworth with the SEC on December 21, 2016 contains false and/or materially misleading statements and/or omits material information. The complaints in all five actions assert claims under Sections 14(a) and 20(a) of the Exchange Act, and seek equitable relief, including declaratory and injunctive relief, and an award of attorneys' fees and expenses. On February 2, 2017, the plaintiff in the Rice action filed a motion for a preliminary injunction to enjoin the March 7, 2017 stockholder vote on the merger pending additional disclosure to Genworth's stockholders concerning the merger. On February 10, 2017, the defendants filed an opposition to the preliminary injunction motion in the Rice action. Also on February 10, 2017, the plaintiff in the Rosenfeld Trust action filed a motion for a preliminary injunction to enjoin the March 7, 2017 stockholder vote on the merger pending additional disclosure to Genworth's stockholders concerning the merger. On February 14, 2017, the defendants filed a motion to transfer the Rosenfeld Trust action to the Eastern District of Virginia. On February 15, 2017, the defendants filed a motion to transfer the Chopp action to the Eastern District of Virginia. On February 21, 2017, the parties to the Eastern District of Virginia actions (Rice, James and Ratliff) reached an agreement in principle to resolve the pending preliminary injunction motion in the Rice action through additional disclosure prior to the March 7, 2017 stockholder vote on the merger. On February 22, 2017, the court in the Eastern District of Virginia consolidated the Rice, James and Ratliff actions, and the plaintiffs withdrew the preliminary injunction motion in the Rice action in consideration of agreed disclosures to be filed in this Form 8-K. Also on February 22, 2017, the court in the District of Delaware suspended briefing on the motion for preliminary injunction in the Rosenfeld Trust action and entered an order transferring the Rosenfeld Trust and Chopp actions to the Eastern District of Virginia. On February 23, 2017, the court in the Eastern District of Virginia received the transferred Rosenfeld Trust and Chopp actions, assigned the actions case numbers 3:17-cv-000156-REP and 3:17-cv-000157-REP, respectively, consolidated the Rosenfeld Trust and Chopp actions, and set the motion for preliminary injunction filed in the Rosenfeld Trust action for hearing on March 1, 2017.

**Important Information About the Transaction and Where to Find It**

This communication may be deemed to be a solicitation material in respect of the transaction. On January 25, 2017, Genworth filed the Definitive Proxy Statement with the SEC in connection with the solicitation of proxies for a special meeting to be held on March 7, 2017. The Definitive Proxy Statement and a proxy card have been mailed to each stockholder of Genworth entitled to vote at the meeting. **Genworth stockholders are urged to read the Definitive Proxy Statement (including any and all amendments and supplements thereto) and all other relevant documents which Genworth will file with the SEC when they become available, because they will contain important information about the proposed transaction and related matters.** Stockholders will also be able to obtain copies of the Definitive Proxy Statement, without charge, when available, at the SEC's website at www.sec.gov or by contacting the investor relations department of Genworth at the following:

investorinfo@genworth.com

**Participants in the Solicitation**

Genworth and its directors and executive officers may be deemed to be participants in the solicitation of proxies of Genworth's stockholders in connection with the proposed transaction. Genworth's stockholders may obtain, without charge, more detailed information regarding such interested participants in the Definitive Proxy Statement, Genworth's Annual Report on Form 10-K filed with the SEC on February 26, 2016, any Statements of Changes in Beneficial Ownership on Form 4 of such participants, filed with the SEC, and certain other documents to be filed with the SEC in connection with the proposed transaction.

**Cautionary Note Regarding Forward-Looking Statements**

This communication includes certain statements that may constitute "forward-looking statements" within the meaning of the federal securities laws, including Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended. Forward-looking statements may be identified by words such as "expects," "intends," "anticipates," "plans," "believes," "seeks," "estimates," "will" or words of similar meaning and include, but are not limited to, statements regarding the outlook for the company's future business and financial performance. Forward-looking statements are based on management's current expectations and assumptions, which are subject to inherent uncertainties, risks and changes in circumstances that are difficult to predict. Actual outcomes and results may differ materially from those in the forward-looking statements and factors that may cause such a difference include, but are not limited to, risks and uncertainties related to: (i) the risk that the transaction may not be completed in a timely manner or at all, which may adversely affect Genworth's business and the price of Genworth's common stock; (ii) the ability of the parties to obtain stockholder and regulatory approvals, or the possibility that they may delay the transaction or that materially burdensome or adverse regulatory conditions may be imposed in connection with any such regulatory approvals; (iii) the risk that a condition to closing of the transaction may not be satisfied; (iv) potential legal proceedings that may be instituted against Genworth following announcement of the transaction; (v) the risk that the proposed transaction disrupts Genworth's current plans and operations as a result of the announcement and consummation of the transaction; (vi) potential adverse reactions or changes to Genworth's business relationships with clients, employees, suppliers or other parties or other business uncertainties resulting from the announcement of the transaction or during the pendency of the transaction, including but not limited to such changes that could affect Genworth's financial performance; (vii) certain restrictions during the pendency of the transaction that may impact Genworth's ability to pursue certain business opportunities or strategic transactions; (viii) continued availability of capital and financing to Genworth before the consummation of the transaction; (ix) further rating agency actions and downgrades in Genworth's financial strength ratings; (x) changes in applicable laws or regulations; (xi) Genworth's ability to recognize the anticipated benefits of the transaction; (xii) the amount of the costs, fees, expenses and other charges related to the transaction; (xiii) the risks related to diverting management's attention from Genworth's ongoing business operations; (xiv) the impact of changes in interest rates and political instability; and (xv) other risks and uncertainties described in the Proxy Statement, Genworth's Annual Report on Form 10-K, filed with the SEC on February 26, 2016 and as updated in Genworth's Form 10-Q filed with the SEC on November 8, 2016. Unlisted factors may present significant additional obstacles to the realization of forward-looking statements. Consequences of material differences in results as compared with those anticipated in the forward-looking statements could include, among other things, business disruption, operational problems, financial loss, legal liability to third parties and similar risks, any of which could have a material adverse effect on Genworth's consolidated financial condition, results of operations, credit rating or liquidity. Accordingly, forward-looking statements should not be relied upon as representing Genworth's views as of any subsequent date, and Genworth does not undertake any obligation to update forward-looking statements to reflect events or circumstances after the date they were made, whether as a result of new information, future events or otherwise, except as may be required under applicable securities laws.

10

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: February 24, 2017                                        **GENWORTH FINANCIAL, INC.**

By:   */s/ Ward E. Bobitz*
        Ward E. Bobitz
        Executive Vice President and General Counsel

11

8-K 1 d337599d8k.htm 8-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

# FORM 8-K

---

### CURRENT REPORT
### PURSUANT TO SECTION 13 OR 15(d)
### OF THE SECURITIES EXCHANGE ACT OF 1934

**February 28, 2017**
**Date of Report**
**(Date of earliest event reported)**

---



# GENWORTH FINANCIAL, INC.
**(Exact name of registrant as specified in its charter)**

---

| Delaware | 001-32195 | 80-0873306 |
|---|---|---|
| **(State or other jurisdiction of incorporation or organization)** | **(Commission File Number)** | **(I.R.S. Employer Identification No.)** |

**6620 West Broad Street, Richmond, VA**     **23230**
**(Address of principal executive offices)**     **(Zip Code)**

**(804) 281-6000**
**(Registrant's telephone number, including area code)**

**Not Applicable**
**(Former Name or Former Address, if Changed Since Last Report)**

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2 below):

☐    Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐    Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐    Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐    Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 8.01 Other Events**

On January 25, 2017, Genworth Financial, Inc. ("Genworth") filed a definitive proxy statement on Schedule 14A (the "Definitive Proxy Statement") with the Securities and Exchange Commission (the "SEC") in connection with the solicitation of proxies for a special meeting of Genworth's stockholders to be held on March 7, 2017, where, among other things, stockholders will vote on a proposal to adopt the Agreement and Plan of Merger, dated as of October 21, 2016 (as it may be amended from time to time in accordance with its terms) by and among Genworth, Asia Pacific Global Capital Co., Ltd. ("Asia Pacific") and Asia Pacific Global Capital USA Corporation, an indirect, wholly owned subsidiary of Asia Pacific. On February 24, 2017, Genworth filed a current report on a Form 8-K supplementing the Definitive Proxy Statement with certain amended and supplemental disclosures ("Supplement No. 1 to the Definitive Proxy Statement"). Genworth is electing to make further supplemental disclosures to the Definitive Proxy Statement as set forth below.

**SUPPLEMENT NO. 2 TO DEFINITIVE PROXY STATEMENT**

*This supplemental information should be read in conjunction with the Definitive Proxy Statement and Supplement No. 1 to the Definitive Proxy Statement which should be read in their entirety. Page references in the below disclosures are to the Definitive Proxy Statement, and defined terms used but not defined herein have the meanings set forth in the Definitive Proxy Statement (as amended and supplemented by Supplement No. 1 to the Definitive Proxy Statement). Without admitting in any way that the disclosures below are material or otherwise required by law, Genworth makes the following amended and supplemental disclosures.*

**The section of the Definitive Proxy Statement entitled: "The Merger—Certain Genworth Unaudited Financial Projections" is amended and supplemented as follows:**

The disclosure in first two full sentences on page 87 of the Definitive Proxy Statement is amended and restated as follows:

After each of these discussions, changes were made to a number of the assumptions used in the preparation of the September projections, including less conservative assumptions relating to future interest rates but also ratings downgrades and the related impact on US MI's market share. Specifically, an estimated tax valuation allowance of $300 million and the potential increase in LTC insurance claim reserves that could be recorded in the third quarter were assumed, in the absence of an extraordinary transaction such as the merger, to result in a subsequent downgrading by S&P of Genworth Holdings; additionally, US MI's S&P ratings were assumed to be downgraded by one or two notches, with a resulting negative impact on US MI's market share, the assumed future interest rates were increased to reflect then-current interest rates and certain third-party estimates, and the assumed price per share to be received in the sale of Genworth Canada was decreased to reflect the reduction in Genworth Canada's per share trading price after September 25, 2016.

The disclosure on page 87 of the Definitive Proxy Statement is amended and supplemented to add the following sentence after the third full sentence on such page:

The net effect of Genworth's management's revisions to the September projections and the assumptions underlying those projections, between September 25, 2016 and October 14, 2016, included, among other things, (i) an increase in the amount of Genworth Holdings' debt that would remain outstanding over the projected period ending December 31, 2021, (ii) an increase in corporate and other expenses in each fiscal year ending December 31, 2016 through 2021 (due in part to higher debt levels during the projected period), (iii) an increase in consolidated non-GAAP operating earnings per share, and operating income, for each fiscal year ending December 31, 2017 and 2018 and (iv) a decrease in consolidated non-GAAP operating earnings per share, and operating income, for each fiscal year ending December 31, 2019, 2020 and 2021.

The disclosure in footnote 2 to the table appearing on page 89 of the Definitive Proxy Statement titled "Financial Metrics" under the section titled "Summary of Genworth's Management Base Forecast" thereof (and restated in its entirety, without modification, in Supplement No. 1 to the Definitive Proxy Statement) is amended and restated as follows:

(2)   MI Dividends reflects the projected dividends for each of Genworth Australia, US MI, and in the case of fiscal 2016 only, Genworth Canada, in the aggregate. The Base Forecast assumes there will be no dividends from U.S. Life to Genworth Holdings during the forecast period. The projected dividends for 2017E include $84 million from Genworth Australia, and $340 million from US MI, $300 million of which are proceeds from an assumed debt issuance by US MI. Genworth Australia is a public company and does not publicly disclose multi-year guidance concerning its financial projections, including projected dividends.

**The disclosure in Supplement No. 1 of the Definitive Proxy Statement, which amended and restated the section of the Definitive Proxy Statement entitled: "Summary—Litigation Related to the Merger (see page 102)" on page 13 of the Definitive Proxy Statement is amended and supplemented by adding the following two sentences after the last sentence of the second paragraph thereof:**

On February 26, 2017, defendants filed an opposition to the preliminary injunction motion in the Rosenfeld Family Trust action. On February 27, 2017, the parties in the Rosenfeld Family Trust action reached an agreement in principle to resolve the pending preliminary injunction motion in the Rosenfeld Family Trust action through additional disclosure prior to the March 7, 2017 stockholder vote on the merger, and the plaintiff in the Rosenfeld Family Trust action withdrew its preliminary injunction motion in consideration of the agreed disclosures to be filed in this Form 8-K by February 28, 2017.

**The disclosure in Supplement No. 1 to the Definitive Proxy Statement, which amended and restated the section of the Definitive Proxy Statement entitled: "The Merger—Litigation Related to the Merger" on page 102 is amended and supplemented by adding the following two sentences after the last sentence of the second paragraph thereof:**

**Litigation Related to the Merger**

On February 26, 2017, defendants filed an opposition to the preliminary injunction motion in the Rosenfeld Family Trust action. On February 27, 2017, the parties in the Rosenfeld Family Trust action reached an agreement in principle to resolve the pending preliminary injunction motion in the Rosenfeld Family Trust action through additional disclosure prior to the March 7, 2017 stockholder vote on the merger, and the plaintiff in the Rosenfeld Family Trust action withdrew its preliminary injunction motion in consideration of the agreed disclosures to be filed in this Form 8-K by February 28, 2017.

**Important Information About the Transaction and Where to Find It**

This communication may be deemed to be solicitation material in respect of the transaction. On January 25, 2017, Genworth filed the Definitive Proxy Statement with the SEC in connection with the solicitation of proxies for a special meeting to be held on March 7, 2017. The Definitive Proxy Statement and a proxy card have been mailed to each stockholder of Genworth entitled to vote at the meeting. **Genworth stockholders are urged to read the Definitive Proxy Statement (including Supplement No. 1 to the Definitive Proxy Statement and any and all other amendments and supplements to the Definitive Proxy Statement) and all other relevant documents which Genworth will file with the SEC when they become available, because they will contain important information about the proposed transaction and related matters.** Stockholders will also be able to obtain copies of the Definitive Proxy Statement, without charge, when available, at the SEC's website at www.sec.gov or by contacting the investor relations department of Genworth at the following:

investorinfo@genworth.com

**Participants in the Solicitation**

Genworth and its directors and executive officers may be deemed to be participants in the solicitation of proxies of Genworth's stockholders in connection with the proposed transaction. Genworth's stockholders may obtain, without charge, more detailed information regarding such interested participants in the Definitive Proxy Statement, Genworth's Annual Report on Form 10-K filed with the SEC on February 27, 2017, any Statements of Changes in Beneficial Ownership on Form 4 of such participants, filed with the SEC, and certain other documents to be filed with the SEC in connection with the proposed transaction.

3

**Cautionary Note Regarding Forward-Looking Statements**

This communication includes certain statements that may constitute "forward-looking statements" within the meaning of the federal securities laws, including Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended. Forward-looking statements may be identified by words such as "expects," "intends," "anticipates," "plans," "believes," "seeks," "estimates," "will" or words of similar meaning and include, but are not limited to, statements regarding the outlook for the company's future business and financial performance. Forward-looking statements are based on management's current expectations and assumptions, which are subject to inherent uncertainties, risks and changes in circumstances that are difficult to predict. Actual outcomes and results may differ materially from those in the forward-looking statements and factors that may cause such a difference include, but are not limited to, risks and uncertainties related to: (i) the risk that the transaction may not be completed in a timely manner or at all, which may adversely affect Genworth's business and the price of Genworth's common stock; (ii) the ability of the parties to obtain stockholder and regulatory approvals, or the possibility that they may delay the transaction or that materially burdensome or adverse regulatory conditions may be imposed in connection with any such regulatory approvals; (iii) the risk that a condition to closing of the transaction may not be satisfied; (iv) potential legal proceedings that may be instituted against Genworth following announcement of the transaction; (v) the risk that the proposed transaction disrupts Genworth's current plans and operations as a result of the announcement and consummation of the transaction; (vi) potential adverse reactions or changes to Genworth's business relationships with clients, employees, suppliers or other parties or other business uncertainties resulting from the announcement of the transaction or during the pendency of the transaction, including but not limited to such changes that could affect Genworth's financial performance; (vii) certain restrictions during the pendency of the transaction that may impact Genworth's ability to pursue certain business opportunities or strategic transactions; (viii) continued availability of capital and financing to Genworth before the consummation of the transaction; (ix) further rating agency actions and downgrades in Genworth's financial strength ratings; (x) changes in applicable laws or regulations; (xi) Genworth's ability to recognize the anticipated benefits of the transaction; (xii) the amount of the costs, fees, expenses and other charges related to the transaction; (xiii) the risks related to diverting management's attention from Genworth's ongoing business operations; (xiv) the impact of changes in interest rates and political instability; and (xv) other risks and uncertainties described in the Proxy Statement and Genworth's Annual Report on Form 10-K, filed with the SEC on February 27, 2017. Unlisted factors may present significant additional obstacles to the realization of forward-looking statements. Consequences of material differences in results as compared with those anticipated in the forward-looking statements could include, among other things, business disruption, operational problems, financial loss, legal liability to third parties and similar risks, any of which could have a material adverse effect on Genworth's consolidated financial condition, results of operations, credit rating or liquidity. Accordingly, forward-looking statements should not be relied upon as representing Genworth's views as of any subsequent date, and Genworth does not undertake any obligation to update forward-looking statements to reflect events or circumstances after the date they were made, whether as a result of new information, future events or otherwise, except as may be required under applicable securities laws.

4

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: February 28, 2017                    **GENWORTH FINANCIAL, INC.**


By:  */s/ Ward E. Bobitz*
              Ward E. Bobitz
              Executive Vice President and General Counsel

5

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| ALEXANDER RICE, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>        v.<br><br>GENWORTH FINANCIAL INCORPORATED, THOMAS J. MCINERNEY, JAMES S. RIEPE, WILLIAM H. BOLINDER, G. KENT CONRAD, MELINA E. HIGGINS, DAVID M. MOFFETT, THOMAS E. MOLONEY, JAMES A. PARKE, DEBRA J. PERRY, and ROBERT P. RESTREPO JR.,<br><br>                Defendants. | Consol. Case No. 3:17-cv-00059-REP |

**ORDER APPROVING THE NOTICE OF PENDENCY
AND PROPOSED SETTLEMENT OF CLASS ACTION**

The parties having made an application for an Order Approving the Notice of Pendency and Proposed Settlement of Class Action (the "Order") in accordance with a Stipulation of Class Action Settlement dated April 4, 2018 (the "Stipulation"), which, together with the exhibits thereto, sets forth the terms and conditions for settlement of this consolidated action; and the Court having read and considered the Stipulation and all accompanying papers;

**IT IS HEREBY ORDERED** that:

1.    <u>Interpretation</u>.  All capitalized terms not defined in this Order shall have the meanings ascribed to them in the Stipulation.

2.    <u>Approval of Notice</u>.  The Court approves, in form and content, the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") annexed as Exhibit C to the Stipulation and finds that the mailing of the Notice will comport with the requirements of Fed. R.

Civ. P. 23 is the best notice practicable and shall constitute due and sufficient notice of the Settlement Hearing (as defined in paragraph 5 below) and all other matters referred to in the Notice to all persons entitled to receive notice of the Settlement Hearing.

3.      Notice Procedures. Before sixty (60) days prior to the date of the Settlement Hearing, Defendant Genworth Financial, Inc. or its successor(s) in interest ("Genworth") shall cause a copy of the Notice, substantially in the form attached as Exhibit C to the Stipulation, to be mailed to all shareholders of record who owned common stock of Genworth at any time during the Class Period (as defined below) at their last known address appearing in the stock transfer records maintained by or on behalf of Genworth. All shareholders of record in the Settlement Class who were not also the beneficial owners of the shares of Genworth common stock held by them of record shall be requested to forward the Notice to such beneficial owners of those shares. Genworth shall use reasonable efforts to give notice to such beneficial owners by making additional copies of the Notice available to any record holder who, prior to the Settlement Hearing, requests the same for distribution to beneficial owners.  Genworth shall, no later than seven (7) days before the Settlement Hearing, cause an appropriate affidavit of proof of mailing with respect to the Notice to be filed with the Court.

4.      Conditional Certification of the Settlement Class.  Pursuant to Fed. R. Civ. P. 23, the Court conditionally certifies, for settlement purposes only, a non-opt-out class consisting of any and all record holders and beneficial owners of common stock of Genworth who held or owned such stock at any time during the period beginning on and including October 23, 2016, through and including the date of consummation of the Merger or, if the Merger is not consummated for any reason, March 7, 2017 (the "Class Period"), including any and all of their respective     successors-in-interest,     successors,     predecessors-in-interest,     predecessors,

2

representatives, trustees, executors, administrators, estates, heirs, beneficiaries, legatees, devisees, assigns and transferees, immediate and remote, and any other person or entity acting for or on behalf of, or claiming under, any of the foregoing (the "Settlement Class"); provided that the Settlement Class shall not include Defendants and their immediate family members, any entity in which any Defendant has a controlling interest, and any successors in interest thereto.

5.    Settlement Hearing.  A hearing shall be held on July 3, 2018 at 10:00 a.m. before the Honorable Robert E. Payne, Senior United States District Judge for the Eastern District of Virginia, in Courtroom 7400 of the Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal Courthouse, 701 East Broad Street, Richmond, Virginia 23219 (the "Settlement Hearing"), to determine whether the Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable and adequate to the Settlement Class and should be finally approved by the Court, and whether a Final Judgment substantially in the form attached as Exhibit D to the Stipulation should be entered.

6.    Stay of Proceedings. Pending Final Approval, all proceedings in the Actions, except those related to the Settlement, are hereby stayed.  Lead Plaintiffs and the Settlement Class Members shall not initiate, assert, commence, prosecute, assist, instigate, continue, or in any way participate in any other proceedings in any forum asserting any Released Claims against any Released Person, other than those that are incidental to the Settlement itself.  The Parties shall cooperate to prevent, stay or seek dismissal of or oppose entry of any interim or final relief in favor of any Settlement Class Member in any other litigation against any of the Parties to this Stipulation which challenges the Settlement or otherwise involves a Released Claim. Pending Final Approval, Lead Plaintiffs and all members of the Settlement Class are barred and enjoined from instituting, prosecuting, participating in, continuing, maintaining or asserting any Released

3

Claims, or assisting any person or entity in instituting, prosecuting, participating in, continuing, maintaining or asserting any Released Claims, against any of the Released Persons, whether directly or indirectly, on their own behalf or on behalf of any class or other person, in any jurisdiction.

7. <u>Appearance at Settlement Hearing and Objections to Settlement</u>. Any Settlement Class Member may appear and show cause why the Settlement should or should not be approved, or why the Final Judgment should or should not be entered; <u>provided</u>, <u>however</u>, that no Settlement Class Member shall be heard or entitled to contest the approval of the terms and conditions of the Settlement or, if approved, the Final Judgment to be entered thereon, or Plaintiffs' Counsel's application for an award of attorneys' fees and expenses, unless that Settlement Class Member has, by June 12, 2018, (a) served on the following counsel, (i) a written notice of objection, including a written notice of his, her or its intention to appear, if he, she or it intends to do so, (ii) proof of his, her or its membership in the Settlement Class, (iii) a written statement of the position he, she or it will assert, (iv) the reason for his, her or its position, and (v) copies of any papers, briefs or other matter he, she or it wishes the Court to consider:

**Co-Lead Counsel for Plaintiffs:**

James M. Wilson, Jr., Esq.
Faruqi & Faruqi, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Tel.: 212-983-9330
Fax: 212-983-9331
Email: jwilson@faruqilaw.com

Michael J. Palestina, Esq.
Kahn Swick & Foti, LLC
206 Covington Street
Madisonville, LA 70447
Tel.: 504-455-1400
Fax: 504-455-1498

Email: Michael.Palestina@ksfcounsel.com

**Counsel for Genworth, Thomas J. McInerney, James S. Riepe, William H. Bolinder, G. Kent Conrad, Melina E. Higgins, David M. Moffett, Thomas E. Moloney, James A. Parke, Debra J. Perry, and Robert P. Restrepo Jr.:**

Greg A. Danilow, Esq.
Evert J. Christensen, Jr., Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Tel.: 212-310-8000
Fax: 212-310-8007
Email: greg.danilow@weil.com
Email: evert.christensen@weil.com

Edward J. Fuhr, Esq.
George P. Sibley III, Esq.
Johnathon E. Schronce, Esq.
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Tel.: 804-788-8200
Fax: 804-788-8218
Email: efuhr@hunton.com
Email: gsibley@hunton.com
Email: jschronce@hunton.com

and (b) filed said objections, papers and briefs with the Clerk of the United States District Court for the Eastern District of Virginia, Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal Courthouse, 701 East Broad Street, Richmond, Virginia 23219, on or before the same date. Any Settlement Class Member who does not make his, her or its objection in the manner provided shall be deemed to have waived such objection (including any right of appeal) and shall forever be barred and foreclosed from making any objection, including any objection to the fairness or adequacy of the Settlement as incorporated in the Stipulation, unless otherwise ordered by the Court.  Plaintiffs' Counsel and counsel for Defendants shall promptly furnish each other with copies of any and all objections or other responsive filings that come into their possession.

5

8.    _Briefing_. On or before June 1, 2018, Plaintiffs' Counsel shall file with the Court a Motion for Final Approval of Class Action Settlement in support of the Court's final approval of the Settlement and their application for an award of attorneys' fees and expenses.  The Parties shall file with the Court responses to any objections no later than June 22, 2018.

9.    _Termination of Settlement_. If the Settlement does not become effective in accordance with the terms of the Stipulation for any reason, the Stipulation, any class certification and any actions taken or to be taken in connection therewith (including this Order and any Final Judgment) shall be vacated, terminated and shall become null and void and of no further force and effect in accordance with the Stipulation.

10.    _No Admissions by the Parties_. The provisions contained in the Stipulation shall not be deemed or constitute a presumption, concession or an admission by Defendants of any fault, liability or wrongdoing as to any facts or claims that have been or might be alleged or asserted in the Actions, and shall not be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person against any Defendant in the Actions or in any other action or proceeding, whether civil, criminal or administrative, for any purpose other than as provided for expressly herein. Nor shall the provisions contained in this Stipulation be deemed a presumption, concession, or admission by Lead Plaintiffs concerning the merits, or lack thereof, of any facts or claims alleged or asserted in the Actions, or any other actions or proceedings, or that any of the Supplemental Disclosures are not material.

11.    _Further Notice_.  The Court may adjourn the Settlement Hearing without further notice to the Settlement Class.  The Court may approve the Settlement, according to the terms and conditions of the Stipulation, as it may be modified by the parties thereto, without further notice to the Settlement Class.  Further, the Court may render its Final Judgment dismissing the

6

Actions with prejudice and approving releases by Lead Plaintiffs and the Settlement Class of Released Claims against the Released Persons without further notice.

      SO ORDERED, this the __ day of April, 2018.

 

                                   _____

                                   Robert E. Payne
                                   Senior United States District Judge

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

ALEXANDER RICE, Individually and On
Behalf of All Others Similarly Situated,

               Plaintiff,

         v.

GENWORTH FINANCIAL
INCORPORATED, THOMAS J.
MCINERNEY, JAMES S. RIEPE, WILLIAM
H. BOLINDER, G. KENT CONRAD,
MELINA E. HIGGINS, DAVID M.
MOFFETT, THOMAS E. MOLONEY,
JAMES A. PARKE, DEBRA J. PERRY, and
ROBERT P. RESTREPO JR.,

               Defendants.

**Consol. Case No. 3:17-cv-00059-REP**

<u>**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION**</u>

**TO:    ANY AND ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF
COMMON STOCK OF GENWORTH FINANCIAL, INC. ("GENWORTH") WHO
HELD OR OWNED SUCH STOCK AT ANY TIME DURING THE PERIOD
BEGINNING ON AND INCLUDING OCTOBER 23, 2016, THROUGH AND
INCLUDING THE DATE OF CONSUMMATION OF THE MERGER (DEFINED
BELOW), OR, IF THE MERGER IS NOT CONSUMMATED FOR ANY
REASON, MARCH 7, 2017 (THE "CLASS PERIOD"), INCLUDING ANY AND
ALL OF THEIR RESPECTIVE SUCCESSORS-IN-INTEREST, SUCCESSORS,
PREDECESSORS-IN-INTEREST, PREDECESSORS, REPRESENTATIVES,
TRUSTEES, EXECUTORS, ADMINISTRATORS, ESTATES, HEIRS,
BENEFICIARIES, LEGATEES, DEVISEES, ASSIGNS AND TRANSFEREES,
IMMEDIATE AND REMOTE, AND ANY OTHER PERSON OR ENTITY
ACTING FOR OR ON BEHALF OF, OR CLAIMING UNDER, ANY OF THE
FOREGOING, BUT NOT INCLUDING DEFENDANTS AND THEIR
IMMEDIATE FAMILY MEMBERS, ANY ENTITY IN WHICH ANY
DEFENDANT HAS A CONTROLLING INTEREST, AND ANY SUCCESSORS IN
INTEREST THERETO (THE "SETTLEMENT CLASS").**

THIS NOTICE WAS SENT TO YOU BY ORDER OF THE COURT. PLEASE READ THIS
NOTICE CAREFULLY AND IN ITS ENTIRETY. THIS NOTICE RELATES TO A
PROPOSED SETTLEMENT OF THIS CLASS ACTION AND, IF YOU ARE A

SETTLEMENT CLASS MEMBER, CONTAINS IMPORTANT INFORMATION AS TO YOUR RIGHTS CONCERNING THE SETTLEMENT DESCRIBED BELOW.

THIS NOTICE IS NOT A LAWSUIT AGAINST YOU. YOU ARE NOT BEING SUED. YOU HAVE RECEIVED THIS NOTICE BECAUSE YOU MAY BE A MEMBER OF THE SETTLEMENT CLASS DESCRIBED HEREIN.

IF YOU HELD SHARES OF GENWORTH STOCK FOR THE BENEFIT OF ANOTHER, PLEASE PROMPTLY SEND THIS NOTICE TO THE BENEFICIAL OWNER.

## I.    PURPOSE OF THIS NOTICE

This Notice is given pursuant to the Order Approving the Notice of Pendency and Proposed Settlement of Class Action of the United States District Court for the Eastern District of Virginia (the "Court") entered in the above-captioned consolidated action on April __, 2018. The purpose of this Notice is to inform you of the pendency and proposed settlement of this consolidated action (the "Settlement") by means of a Stipulation of Settlement (the "Stipulation") entered into by the Parties and filed with the Court, and to notify you of a hearing to be held on July 3, 2018 at 10:00 a.m. (the "Settlement Hearing"), before the Honorable Robert E. Payne, United States District Court Judge of the United States District Court for the Eastern District of Virginia, in Courtroom 7400 of the Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal Courthouse, 701 East Broad Street, Richmond, Virginia 23219, to determine: (a) whether the Court should certify the Settlement Class (defined below) for purposes of the Settlement; (b) whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate; (c) whether the proposed Settlement should be finally approved by the Court; (d) whether the Final Judgment (defined below) provided for in the Stipulation should be entered, *inter alia*, dismissing the consolidated action with prejudice; (e) whether to award Plaintiffs' Counsel (defined below) attorneys' fees and expenses; and (f) such other matters as the Court may deem appropriate.

The Court has determined that, for purposes of the Settlement only, this consolidated action shall be conditionally maintained as a non-opt-out class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Settlement Class.  At the Settlement Hearing, the Court will also consider whether the Settlement Class should be permanently certified as a non-opt-out settlement class pursuant to Rule 23 of the Federal Rules of Civil Procedure and whether Lead Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Class.

This Notice describes the rights that you may have pursuant to the Settlement and what steps you may, but are not required to, take in relation to the Settlement.

If the Court approves the Settlement, the Parties will ask the Court at the Settlement Hearing to enter a Final Judgment (defined below) dismissing this consolidated action with prejudice on the merits and releasing all Released Claims (defined below).

The Court has reserved the right to adjourn the Settlement Hearing without further notice to the Settlement Class other than by announcement at the Settlement Hearing or any

adjournment thereof.  The Court has further reserved the right to approve the Settlement at or after the Settlement Hearing with such modifications as may be consented to by the Parties and without further notice to the members of the Settlement Class.

## II.   HISTORY AND BACKGROUND OF THE SETTLEMENT

THE FOLLOWING RECITATION DOES NOT CONSTITUTE FINDINGS OF THE COURT. IT IS BASED ON THE STATEMENTS OF THE PARTIES AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES.

On October 23, 2016, Genworth Financial, Inc. ("Genworth" or the "Company") and China Oceanwide Holdings Group Co., Ltd. ("China Oceanwide") jointly announced that they had entered into a definitive Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which Asia Pacific Global Capital Company, Ltd. ("Parent"), a limited liability company incorporated in the People's Republic of China and affiliate of China Oceanwide, will acquire all of the issued and outstanding shares of Genworth common stock (the "Merger") for $5.43 per share in cash (the "Merger Consideration").

In connection with the Merger Agreement, on December 21, 2016, Genworth filed a Schedule 14A Preliminary Proxy Statement (the "Preliminary Proxy Statement") with the U.S. Securities and Exchange Commission ("SEC"), and on January 25, 2017, Genworth filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  In the Proxy Statement, Genworth's board of directors (the "Board") recommended that Genworth shareholders vote in favor of the Merger at a special shareholder meeting scheduled for March 7, 2017.

Following the announcement of the Merger and filing of the Preliminary Proxy Statement, Plaintiff Rice in the above-captioned action as well as plaintiffs in other actions (together, the "Actions") filed suit naming as defendants Genworth and the individual members of the Board (collectively, "Defendants"), and alleging that the Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and the SEC's rules and regulations promulgated under Section 14(a).  The complaints allege that Defendants violated Section 14(a) by recommending the Merger with the Proxy Statement containing false and/or misleading information.  The Actions were each commenced as putative class actions on behalf of a class of all of Genworth's common shareholders other than Defendants and their affiliates.

On February 2, 2017, Plaintiff Rice (joined by Plaintiff James) filed a Motion for Preliminary Injunction (the "Rice PI Motion") in which Plaintiff Rice sought to enjoin the shareholder vote on the Merger unless and until certain supplemental disclosures were made to Genworth's shareholders that corrected the alleged deficiencies identified in the Proxy Statement. On the same date, the Court held a conference call with Defendants' counsel and counsel for Plaintiff Rice regarding the Rice PI Motion, and, on February 6, 2017, the Court scheduled a hearing on the Rice PI Motion for February 22, 2017.

On February 6, 2017, counsel for Plaintiffs Rice and James sent a demand letter to Defendants identifying certain misleading disclosures in the Proxy Statement that they sought to have Defendants correct.

On February 10, 2017, Defendants filed their opposition to the Rice PI Motion.  On the same date, Plaintiff Rosenfeld Family Trust filed a motion for expedited proceedings and a preliminary injunction seeking to enjoin the March 7, 2017 Genworth stockholder vote in an action then pending in the United States District Court for the District of Delaware (and later transferred to the Court), *Rosenfeld Family Trust v. Genworth Financial, Inc.*, No. 3:17-cv-00156-REP (the "Rosenfeld Trust PI Motion").  On February 13, 2017, the United States District Court for the District of Delaware scheduled an expedited hearing for the Rosenfeld Trust PI Motion for February 24, 2017, which the District Court vacated on February 14, 2017. Defendants moved to transfer the Rosenfeld Family Trust action to the Court, which motion was granted on February 22, 2017.  After transfer, the Court scheduled an expedited hearing for the Rosenfeld Trust PI Motion for March 1, 2017.

On February 14, 2017, the Court held a conference call with counsel for Defendants and counsel for Plaintiffs Rice, James, and Ratliff to discuss the Rice PI Motion, after which the Court referred the matter to Magistrate Judge David J. Novak for settlement discussions. Thereafter counsel contacted Magistrate Judge Novak and agreed to a schedule for settlement negotiations prior to the March 7, 2017 shareholder vote.

On February 15, 2017, Plaintiff Rice published notice of the Lead Plaintiff deadline pursuant to the Private Securities Litigation Reform Act ("PSLRA") via PR Newswire, which set a deadline for Genworth shareholders to move to be appointed lead plaintiff of the Actions.

On February 16, 2017, Plaintiff Ratliff sent a demand letter to counsel for Defendants outlining supplemental disclosure that he contended was necessary to prevent the Proxy Statement from being materially misleading.

On February 16, 2017, counsel for Defendants sent a letter to counsel for Rice, James, and Ratliff outlining what supplemental disclosure Genworth was prepared to make in order to resolve the Rice PI Motion.

On February 17, 2017, Plaintiffs Rice and James filed an emergency motion to consolidate the three actions filed in the Court (the "Virginia Actions") and to appoint Faruqi & Faruqi, LLP as interim class counsel, which motion, after briefing, was granted for purposes of arguing the Rice PI Motion.

On February 21, 2017, following discussions and negotiations, the parties to the Virginia Actions reached an agreement in principle for Genworth to issue certain additional disclosures prior to the March 7, 2017 shareholder vote, which disclosures would moot the grounds for the Rice PI Motion.

At the February 22, 2017 hearing, the parties informed the Court of the agreement in principle, Plaintiffs Rice and James withdrew the Rice PI Motion, and the Court entered an order consolidating the Virginia Actions under No. 3:17-cv-00059-REP, denying the Rice PI Motion

as moot, and directing the parties to submit a schedule for the appointment of lead plaintiff and lead counsel in accordance with the PSLRA (which schedule was filed with the Court on March 6, 2017).

On February 24, 2017, Genworth filed the supplemental disclosures negotiated with Plaintiffs James, Rice, and Ratliff with the SEC on Form 8-K and disseminated them to Genworth shareholders.

On February 27, 2017, following discussions and negotiations, counsel for Defendants and counsel for plaintiff in the Rosenfeld Family Trust action informed the Court that the Rosenfeld Trust PI Motion would be mooted by proposed supplemental disclosures Genworth agreed to file with the SEC, which disclosures were filed on Form 8-K and disseminated to Genworth shareholders on February 28, 2017 (the disclosures issued on February 24 and 28, 2017 are referred to collectively as the "Supplemental Disclosures").

On March 7, 2017, the Court consolidated two actions transferred to this Court from the United States District Court for the District of Delaware (the "Delaware Actions") with the Virginia Actions under No. 3:17-CV-0059-REP.

On March 7, 2017, the Genworth shareholders voted at the previously scheduled meeting in favor of the Merger.

On April 17, 2017, Plaintiffs Rice and James moved for appointment as Lead Plaintiff as the James/Rice Investor Group. Thereafter, after extensive briefing, conferences with the Court (including on May 16, 2017), and oral argument (on July 5, 2017), followed by additional supplemental briefing, on August 25, 2017, the Court appointed Plaintiffs Rice and James as Lead Plaintiffs ("Lead Plaintiffs") and appointed the law firms of Faruqi & Faruqi, LLP and Kahn Swick & Foti, LLC as Co-Lead Counsel and MeyerGoergen PC as Liaison Counsel (together "Plaintiffs' Counsel") of the consolidated Actions.

After arm's-length negotiations, the Parties entered into a Memorandum of Understanding ("MOU"), dated November 1, 2017, which reflected an agreement in principle to settle the Actions on the terms and subject to the conditions set forth therein, including certain discovery ("Confirmatory Discovery"), which included the production of documents and the taking of depositions, to confirm the fairness, adequacy and reasonableness of the terms of the settlement set forth in the MOU.

During the months of November and December 2017, pursuant to the MOU, the Parties negotiated the terms of a protective order to govern the production of confidential information for Confirmatory Discovery purposes and engaged in Confirmatory Discovery, including depositions of two Genworth directors.

During Confirmatory Discovery, a dispute arose regarding the discoverability of certain documents and redactions made thereto.

On January 5, 2018, Plaintiffs' Counsel informed the Court of the discovery dispute.

On March 16, 2018, following briefing and an *in camera* review of the documents in dispute by this Court, the Court entered an order resolving the discovery dispute and, on March 19, 2018, Defendants produced certain additional documents.

Upon reviewing the additional documents, Plaintiffs' Counsel determined that Confirmatory Discovery had been completed and advised Defendants that they continued to believe that the terms of the Settlement were fair, reasonable and adequate.

On March 21, 2018, the Court held a telephonic hearing with the Parties, at which the schedule for proceeding with the Settlement was agreed and was entered by the Court on March 22, 2018.

On April __, 2018, the Court entered an order providing for, among other things, the provisional certification of the Settlement Class; the preliminary approval of the Settlement; the issuance of this Notice to the Settlement Class; and an injunction against the commencement or prosecution of any action by any member of the Settlement Class asserting any of the claims subject to the Settlement.

## III.   THE PROPOSED SETTLEMENT

In consideration for the full and final settlement and release of all Released Claims (defined below) and the dismissal with prejudice of the Actions, and the other consideration set forth in the Stipulation, Genworth agreed to provide, and did provide, the Supplemental Disclosures in two Current Reports on Form 8-Ks filed with the SEC on February 24, 2017 and February 28, 2017.   Without admitting any wrongdoing, Defendants acknowledge that Genworth's decision to make the Supplemental Disclosures was the result of the pendency of the Actions, Defendants' desire to resolve the pending PI Motions and the Actions, and negotiations between counsel for Defendants and counsel for Plaintiffs.   Lead Plaintiffs and Plaintiffs' Counsel believe that, with the dissemination of the Supplemental Disclosures, the grounds for seeking to enjoin the March 7, 2017 stockholder vote and for otherwise seeking relief in the Actions were mooted.   Lead Plaintiffs and Plaintiffs' Counsel further believe that the dissemination of the Supplemental Disclosures fully resolved all of their claims under Section 14(a) of the Exchange Act that were or could have been asserted in the Actions.

Lead Plaintiffs and Plaintiffs' Counsel believe that the claims they have asserted in the Actions have legal merit, and that their claims were brought in good faith, and the entry by Lead Plaintiffs into the Stipulation is not an admission as to the lack of merit of any claims asserted in the Actions, but that they entered into the Stipulation and Settlement because they believe the Settlement provided substantial benefits to the shareholders of Genworth, including an opportunity to make a more fully informed decision with respect to the Merger, and is fair, reasonable, and adequate.

Defendants have denied, and continue to deny, any wrongdoing or liability with respect to all claims asserted in the Actions, including that they have committed any violations of law, that they have acted improperly in any way, that they have any liability or owe any damages of any kind to Lead Plaintiffs or the Settlement Class, and that any additional disclosures (including the additional disclosures made in the Supplemental Disclosures) are required under any

applicable rule, regulation, statute, or law, but are entering into the Stipulation solely because they consider it desirable that the litigation be settled and dismissed with prejudice in order to, among other things: (i) eliminate the burden, inconvenience, expense, distraction and uncertainty of further litigation; and (ii) finally resolve and terminate the Released Claims that were or could have been asserted against Defendants in the Actions.

## IV.   THE RELEASES

The Stipulation provides, among other things:

(a) For the certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure, of a non-opt-out class that includes any and all record holders and beneficial owners of common stock of Genworth who held or owned such stock at any time during the period beginning on and including October 23, 2016, through and including the date of consummation of the Merger or, if the Merger is not consummated for any reason, March 7, 2017 (the "Class Period"), including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, beneficiaries, legatees, devisees, assigns and transferees, immediate and remote, and any other person or entity acting for or on behalf of, or claiming under, any of the foregoing (the "Settlement Class"); provided that the Settlement Class shall not include Defendants and their immediate family members, any entity in which any Defendant has a controlling interest, and any successors-in interest thereto; and provided further that certification of the Settlement Class is for settlement purposes only, is dependent on Final Approval (as defined in the Stipulation), and shall be null and void in the event that Final Approval (as defined in the Stipulation) is not obtained;

(b) For the full and complete discharge, settlement, release, and dismissal with prejudice on the merits of the claims that were or could have been asserted under Section 14(a) of the Exchange Act by Plaintiffs in the Actions in their capacity as Genworth common stock shareholders against any of the Released Persons (defined below), in any court, tribunal, forum or proceeding based upon, arising out of, relating in any way to, or involving, directly or indirectly, the contents of the Proxy Statement (the "Released Claims"); provided, however, for the avoidance of doubt, that the Released Claims shall not include the right to enforce the Settlement or any claims or rights of any Defendant against its insurers or insurers' successors or assignees; provided further, for the avoidance of doubt, that the Released Claims shall not include, and the Settlement shall not be construed to in any way settle, compromise, or otherwise affect, any derivative claims on behalf of and/or against Genworth, its current or former directors, or its current or former officers (specifically including, but not limited to, the derivative claims raised in *In re Genworth Financial, Inc. Consolidated Derivative Litigation*, C.A. No. 11901-VCS (Del. Ch.) and any other currently pending derivative suit on behalf of and/or against Genworth, its current or former directors, or its current or former officers), except derivative claims (if any) under Section 14(a) of the Exchange Act relating to the Proxy Statement (which, to the best of the Parties' knowledge, information and belief, are not currently pending or asserted in any of the Actions or in any other action or proceeding);

(c) That the release provided for in the Settlement shall include all Released Claims on behalf of Lead Plaintiffs and all Settlement Class Members, and that Lead Plaintiffs and all members of the Settlement Class shall be forever barred and enjoined from instituting,

prosecuting, participating in, continuing, maintaining or asserting any Released Claims, or assisting any person or entity in instituting, prosecuting, participating in, continuing, maintaining or asserting any Released Claims against any of the Released Persons, whether directly or indirectly, on their own behalf or on behalf of any class or other person, in any jurisdiction.

(d) That Defendants release Lead Plaintiffs and Plaintiffs' Counsel from any and all claims, complaints, petitions, or sanctions arising out of the investigation, commencement, prosecution, settlement, or resolution of the Actions, and shall be barred from asserting same; provided, however, that such releases will not include a release of the right to enforce the Stipulation or the Settlement or any claims or rights of any Defendant against its insurers or insurers' successors or assignees;

(e) Whether or not each or all of the following persons or entities were served with process or appeared in the Actions, that "Released Persons" means every entity or natural person named as a defendant in the complaints or amended complaint in any of the Actions, and each of their respective past, present, or future family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, legatees, devisees, foundations, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates, whether or not such persons and entities were named or appeared in the Actions.

(f) The releases contemplated by the Stipulation extend to, and Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants will be deemed to relinquish, to the extent it is applicable, and to the fullest extent permitted by law, the provisions, rights, and benefits of §1542 of the California Civil Code which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

(g) Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants will be deemed to relinquish, to the extent they are applicable, and to the fullest extent permitted by law, the provisions, rights, and benefits of any law of any state or territory of the United States, federal law, or principle of common law, which is similar, comparable, or equivalent to §1542 of the California Civil Code. Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants acknowledge that they may discover facts after completing Confirmatory Discovery and executing the Stipulation in addition to or different from those now known or believed to be true with respect to the settled claims, but that it is the intention of the Parties to hereby fully, finally, and forever settle and release any and all Released

Claims. Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants acknowledge, and shall be deemed to have acknowledged, that the inclusion of this paragraph was separately bargained for, is an integral element of the Settlement and was relied upon by each and all of the Parties in entering into this Stipulation and Settlement.

## V.   ORDER AND FINAL JUDGMENT ("FINAL JUDGMENT")

At the Settlement Hearing, the Parties will jointly ask the Court to enter an Order and Final Judgment, which will, among other things:

(a)      approve the Settlement pursuant to Fed. R. Civ. P. 23;

(b)      authorize and direct performance of the Settlement in accordance with its terms and conditions;

(c)      permanently certify the Settlement Class for settlement purposes only, pursuant to Fed. R. Civ. P. 23;

(d)      grant the releases described more fully above in accordance with the terms of the Stipulation;

(e)      permanently bar and enjoin Lead Plaintiffs and all members of the Settlement Class from instituting, prosecuting, participating in, continuing, maintaining or asserting any Released Claims;

(f)      dismiss the Actions with prejudice on the merits;

(g)      award Plaintiffs' Counsel's attorneys' fees and expenses, if any; and

(h)      reserve jurisdiction over all matters relating to the administration and effectuation of the Settlement.

## VI.   PLAINTIFFS' COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiffs' Counsel have neither received any payment for their services in prosecuting the Actions on behalf of Lead Plaintiffs and the Settlement Class, nor been paid for their litigation expenses incurred to date. Lead Plaintiffs reserve the right to submit an application to the Court concurrent with their Motion for Final Approval seeking reasonable attorneys' fees, costs, and expenses not to exceed $1,075,000.00 in the aggregate, and Defendants reserve the right to oppose any application by Plaintiffs' Counsel for an award of attorneys' fees, costs, and expenses, including any entitlement to an award of any attorneys' fees, costs, or expenses as well as the amount of any such award, and to make any and all arguments against entitlement to or the amount of the attorneys' fees, costs, and expenses as Defendants deem appropriate. Genworth or its successor(s) will pay, or cause to be paid, to Plaintiffs' Counsel on behalf of all Defendants, the amount, if any, of the attorneys' fees, costs and expenses approved or awarded by the Court. Neither you nor any other member of the Settlement Class is personally liable for any award of attorneys' fees, costs, and expenses.  Any such award of attorneys' fees, costs, and expenses

approved by the Court will be the only payment to Plaintiffs' Counsel for their efforts in achieving this Settlement and for their risk in undertaking this representation on a wholly contingent basis.

## VII.   THE SETTLEMENT HEARING

The Settlement Hearing will be held on July 3, 2018 at 10:00 a.m. before the Honorable Robert E. Payne, Senior United States District Judge of the United States District Court for the Eastern District of Virginia, in Courtroom 7400 of the Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal Courthouse, 701 East Broad Street, Richmond, Virginia 23219.

Any Settlement Class Member may appear and show cause why the Settlement should or should not be approved, or why the Final Judgment should or should not be entered; provided, however, that no Settlement Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement or, if approved, the Final Judgment to be entered thereon, or Plaintiffs' Counsel's application for an award of attorneys' fees and expenses, unless that Settlement Class Member has, on or before June 12, 2018, (a) served on the following counsel (i) a written notice of objection, including a written notice of his, her or its intention to appear, if he, she or it intends to do so, (ii) proof of his, her or its membership in the Settlement Class, (iii) a written statement of the position he, she or it will assert, (iv) the reason for his, her or its position, and (v) copies of any papers, briefs or other matter he, she or it wishes the Court to consider:

| | |
|---|---|
| **Counsel for Plaintiffs:** | James M. Wilson, Jr., Esq.<br>Faruqi & Faruqi, LLP<br>685 Third Avenue, 26th Floor<br>New York, NY 10017<br>Tel.: 212-983-9330<br>Fax: 212-983-9331<br>Email: jwilson@faruqilaw.com |
| | Michael J. Palestina, Esq.<br>Kahn Swick & Foti, LLC<br>206 Covington Street<br>Madisonville, LA 70447<br>Tel.: 504-455-1400<br>Fax: 504-455-1498<br>Email: Michael.Palestina@ksfcounsel.com |
| **Counsel for Genworth, Thomas J. McInerney, James S. Riepe, William H. Bolinder, G. Kent Conrad, Melina E. Higgins, David M. Moffett, Thomas E. Moloney, James A. Parke, Debra J. Perry, and Robert P. Restrepo Jr.:** | Greg A. Danilow, Esq.<br>Evert J. Christensen, Jr., Esq.<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Tel.: 212-310-8000<br>Fax: 212-310-8007<br>Email: greg.danilow@weil.com |

Email: evert.christensen@weil.com

Edward J. Fuhr, Esq.
George P. Sibley III, Esq.
Johnathon E. Schronce, Esq.
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
Tel.: 804-788-8200
Fax: 804-788-8218
Email: efuhr@hunton.com
Email: gsibley@hunton.com
Email: jschronce@hunton.com

and (b) filed said objections, papers and briefs with the Clerk of the United States District Court for the Eastern District of Virginia, Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal Courthouse, 701 East Broad Street, Richmond, Virginia 23219, on or before the same date.

Any Settlement Class Member who does not make his, her, or its objection in the manner provided shall be deemed to have waived such objection (including any right of appeal) and shall forever be barred and foreclosed from making any objection, including any objection to the fairness or adequacy of the Settlement as incorporated in the Stipulation, unless otherwise ordered by the Court.

The Court has reserved the right to adjourn the date of the Settlement Hearing or modify any other dates set forth herein without further notice to the Settlement Class Members. The Court may approve the Settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Settlement Class Members.

## VIII. NOTICE TO PERSONS OR ENTITIES THAT HELD OWNERSHIP ON BEHALF OF OTHERS

Brokerage firms, banks and/or other persons or entities who held shares of the common stock of Genworth included in the Settlement Class for the benefit of others are requested to promptly send this Notice to all of their respective beneficial owners. If additional copies of the Notice are needed for forwarding to such beneficial owners, any requests for such copies may be made to:

[TO BE INSERTED]

## IX. EXAMINATION OF PAPERS

This notice is not all-inclusive. It contains only a summary of the terms of the proposed Settlement. For a more detailed statement of the matters involved in these proceedings, you may refer to the Stipulation and the other papers on file with the Court.

If you have any questions, please make all inquiries to Plaintiffs' Counsel identified above.  PLEASE DO NOT CONTACT THE COURT DIRECTLY.

Dated:  April __, 2018

DISTRIBUTED BY ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| ALEXANDER RICE, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | Consol. Case No. 3:17-CV-00059 |
| GENWORTH FINANCIAL INCORPORATED, THOMAS J. MCINERNEY, JAMES S. RIEPE, WILLIAM H. BOLINDER, G. KENT CONRAD, MELINA E. HIGGINS, DAVID M. MOFFETT, THOMAS E. MOLONEY, JAMES A. PARKE, DEBRA J. PERRY, and ROBERT P. RESTREPO JR., | |
| Defendants. | |

## ORDER AND FINAL JUDGMENT

This matter having come before the Court pursuant to the Court's Order dated March 22, 2018 (the "Scheduling Order") for final approval of the terms of a Stipulation of Settlement ("Stipulation") dated April 4, 2018, made and entered into by and among (i) Lead Plaintiffs Alexander Rice and Brian James and (ii) Defendants Genworth Financial, Inc. ("Genworth"), Thomas J. McInerney, James S. Riepe, William H. Bolinder, G. Kent Conrad, Melina E. Higgins, David M. Moffett, Thomas E. Moloney, James A. Parke, Debra J. Perry, and Robert P. Restrepo, Jr. (collectively, "Defendants," and together with Plaintiffs, the "Parties"), who constitute all of the parties in the above-captioned consolidated action; and the Court having held a hearing, on July 3, 2018 at 10:00 a.m. (the "Settlement Hearing") to consider the proposed settlement as embodied in the Stipulation (the "Settlement"); and the Court having determined

that due, adequate and sufficient notice has been given in accordance with the Order Approving the Notice of Pendency and Proposed Settlement of Class Action (the "Notice Order"); and all parties duly appearing having been heard; and an opportunity to be heard having been given to all other persons desiring to be heard as provided in the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"); and the entire matter of the Settlement having been heard and considered by the Court;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    All capitalized terms not defined in this Order and Final Judgment shall have the meanings ascribed to them in the Stipulation.

2.    This Court has jurisdiction over the subject matter of the Actions and, for the purposes of settlement of the Actions only, over all parties to the Actions, including but not limited to, Lead Plaintiffs, all members of the Settlement Class (as defined below), and the Defendants.

3.    The Court finds, for purposes of settlement only, that each of the requirements of Fed. R. Civ. P. 23 has been satisfied, in that (a) the members of the Settlement Class are so numerous that separate joinder of each member is impracticable, (b) Lead Plaintiffs' claims or defenses raise questions of law or fact common to the questions of law or fact raised by the claims or defenses of each member of the Settlement Class, (c) Lead Plaintiffs' claims or defenses are typical of the claims or defenses of each member of the Settlement Class, (d) Lead Plaintiffs can fairly and adequately protect and represent the interests of each member of the Settlement Class, (e) the prosecution of separate claims or defenses by or against individual members of the Settlement Class would create a risk of either: (i) inconsistent or varying adjudications concerning individual members of the Settlement Class, which would establish

incompatible standards of conduct for Defendants; or (ii) adjudications concerning individual members of the Settlement Class, which would, as a practical matter, be dispositive of the interests of other members of the Settlement Class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the Settlement Class who are not parties to the adjudications to protect their interests; and (f) Lead Plaintiffs claim that Defendants have acted or refused to act on grounds generally applicable to all the members of the Settlement Class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate.

4.      Pursuant to Fed. R. Civ. P. 23, the Court hereby certifies, for settlement purposes only, a non-opt-out class consisting of any and all record holders and beneficial owners of common stock of Genworth who held or owned such stock at any time during the period beginning on and including October 23, 2016, through and including the date of consummation of the Merger or, if the Merger is not consummated for any reason, March 7, 2017 (the "Class Period"), including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, beneficiaries, legatees, devisees, assigns and transferees, immediate and remote, and any other person or entity acting for or on behalf of, or claiming under, any of the foregoing (the "Settlement Class"); provided that the Settlement Class shall not include Defendants and their immediate family members, any entity in which any Defendant has a controlling interest, and any successors in interest thereto.

5.      The Notice was sent to the Settlement Class Members pursuant to and in the manner directed by the Notice Order. All Parties, the Settlement Class Members, and persons in interest have been afforded a full opportunity to be heard. The form and manner of the Notice is

hereby determined to have been the best notice practicable under the circumstances and is due and sufficient notice to the members of the Settlement Class pursuant to Fed. R. Civ. P. 23, due process and any other applicable law.  All Settlement Class Members are bound by this Order and Final Judgment.

6.     The Court finds that the Settlement set forth in the Stipulation is fair, reasonable and adequate and in the best interests of the Settlement Class and should be approved. Accordingly, the Stipulation and the terms of the Settlement as described in the Stipulation are hereby approved in their entirety and incorporated into this Order and Final Judgment. The parties to the Settlement are hereby directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation. Lead Plaintiffs, all Settlement Class Members, and Defendants are hereby bound by the terms of the Settlement as set forth in the Stipulation.

7.     Upon the Effective Date of the Settlement (as defined in the Stipulation), Lead Plaintiffs and the Settlement Class shall be deemed to have, and by operation of this Order and Final Judgment shall have, fully and completely discharged, settled, released, and dismissed with prejudice on the merits the claims that were or could have been asserted under Section 14(a) of the Exchange Act by Plaintiffs in the Actions in their capacity as Genworth common stock shareholders against any of the Released Persons (defined below), in any court, tribunal, forum or proceeding based upon, arising out of, relating in any way to, or involving, directly or indirectly, the contents of the Proxy Statement (as defined in the Stipulation) (the "Released Claims"); provided, however, for the avoidance of doubt, that the Released Claims shall not include the right to enforce the Settlement or any claims or rights of any Defendant against its insurers or insurers' successors or assignees; provided further, for the avoidance of doubt, that the Released Claims shall not include, and the Settlement shall not be construed to in any way

settle, compromise, or otherwise affect, any derivative claims on behalf of and/or against Genworth, its current or former directors, or its current or former officers (specifically including, but not limited to, the derivative claims raised in *In re Genworth Financial, Inc. Consolidated Derivative Litigation*, C.A. No. 11901-VCS (Del. Ch.) and any other currently pending derivative suit on behalf of and/or against Genworth, its current or former directors, or its current or former officers), except derivative claims (if any) under Section 14(a) of the Exchange Act relating to the Proxy Statement (which, to the best of the Parties' knowledge, information and belief, are not currently pending or asserted in any of the Actions or in any other action or proceeding);

8.      "Released Persons" means every entity or natural person named as a defendant in the complaint or amended complaint in any of the Actions, and each of their respective past, present, or future family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, legatees, devisees, foundations, agents, employees, fiduciaries, partners, control persons, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, underwriters, brokers, dealers, lenders, commercial bankers, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates, whether or not such persons and entities were named or appeared in the Actions.

9.      Lead Plaintiffs and all members of the Settlement Class shall be forever barred and enjoined from instituting, prosecuting, participating in, continuing, maintaining or asserting any Released Claims, or assisting any person or entity in instituting, prosecuting, participating in, continuing, maintaining or asserting any Released Claims, against any of the Released Persons, whether directly or indirectly, on their own behalf or on behalf of any class or other person, in any jurisdiction.

10.     Upon the Effective Date of the Settlement (as defined in the Stipulation), Defendants shall be deemed to have, and by operation of this Order and Final Judgment shall have, released Lead Plaintiffs and Plaintiffs' Counsel from any and all claims, complaints, petitions, or sanctions arising out of the investigation, commencement, prosecution, settlement, or resolution of the Actions; provided, however, that Defendants shall retain the right to enforce the terms of this Stipulation and the Settlement and any claims or rights of any Defendant against its insurers or insurers' successors or assignees.

11.     The releases contemplated in Paragraphs 35 and 36 of the Stipulation and this Order and Final Judgment extend to, and Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants will be deemed to relinquish, to the extent it is applicable, and to the fullest extent permitted by law, the provisions, rights, and benefits of §1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

12.     In addition, Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants will be deemed to relinquish, to the extent they are applicable, and to

the fullest extent permitted by law, the provisions, rights, and benefits of any law of any state or territory of the United States, federal law, or principle of common law, which is similar, comparable, or equivalent to §1542 of the California Civil Code.  Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants acknowledge that they may discover facts after completing Confirmatory Discovery and executing the Stipulation in addition to or different from those now known or believed to be true with respect to the settled claims, but that it is the intention of the Parties to hereby fully, finally, and forever settle and release any and all Released Claims. Lead Plaintiffs, on behalf of themselves and the Settlement Class Members, and Defendants acknowledge, and shall be deemed to have acknowledged, that the inclusion of this paragraph was separately bargained for, is an integral element of the Settlement and was relied upon by each and all of the Parties in entering into this Stipulation and Settlement.

13.    The Action is hereby dismissed as against all Defendants on the merits and with prejudice and without costs to any party as against any other party, except as otherwise agreed to in the Stipulation and as set forth herein.

14.    The Court, having considered the nature of the Action, the time and effort expended by Plaintiffs' Counsel, and the results obtained on behalf of the Settlement Class, hereby orders that Genworth (or its successor(s), assign(s), and/or their insurer(s), and/or the insurer(s) of the Individual Defendants) shall pay, on behalf of all Defendants, the sum of $_____ in attorneys' fees, costs and expenses to Plaintiffs' Counsel in accordance with, and subject to, the terms and conditions of the Stipulation.

15.    The provisions contained in the Stipulation shall not be deemed or constitute a presumption, concession or an admission by Defendants of any fault, liability or wrongdoing as to any facts or claims that have been or might be alleged or asserted in the Actions, and shall not

be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person against any Defendant in the Actions or in any other action or proceeding, whether civil, criminal or administrative, for any purpose other than as provided for expressly in the Stipulation. Nor shall the provisions contained in the Stipulation be deemed a presumption, concession, or admission by Lead Plaintiffs concerning the merits, or lack thereof, of any facts or claims alleged or asserted in the Actions, or any other actions or proceedings, or that any of the Supplemental Disclosures are not material.

16.     The Court approves the Settlement and retains jurisdiction, without affecting the finality of this Order and Final Judgment, over the implementation and enforcement of the Settlement and this Order and Final Judgment.

17.     If the Settlement does not become effective in accordance with the terms of the Stipulation for any reason, the Stipulation, any class certification and any actions taken or to be taken in connection therewith (including this Order and Final Judgment) shall be vacated, terminated and shall become null and void and of no further force and effect in accordance with the Stipulation.

18.     There being no just reason for delay, the Court hereby directs that this Order and Final Judgment be entered by the Clerk of the Court.

So ordered, this the ___ day of July, 2018.

_____
Robert E. Payne
Senior United States District Judge